Champlin *v.* Rowley.

---

### CHAMPLIN *vs.* ROWLEY.

Where a contract was made for the sale and delivery, within a given period, of 100 tons of pressed hay, to be paid for at a specified price per ton, part in advance and the *residue when the whole quantity should be delivered*, and the vendor, within the time stipulated, delivered only about *one half* of the specified quantity, and then brought his action to recover for the quantity delivered, at the stipulated price ; *it was held*, that the delivery of the *whole quantity* was a *condition precedent*, and that the plaintiff was not entitled to sustain his action : the defendant on his part not having *waived* or *prevented* a full performance.

The rule of law that a defendant is entitled to a *reduction in damages*, who is sued for work done or for property delivered under a contract *not performed in the manner and within the time stipulated*, recognized and approved as sound and salutary, but *held* inapplicable to this case.

The care necessary in turning a *bill of exceptions*, upon which a *venire de novo* might properly be awarded, into a *special verdict* upon which an *absolute judgment* must be rendered either for the plaintiff or defendant, pointed out and illustrated.

ERROR from the supreme court. Champlin sued Rowley in an action of assumpsit, and declared on the common counts for goods and chattels and *hay sold*

and delivered. On the trial of the cause, it appeared that on 12th September, 1831, a contract was entered into by the parties, whereby the plaintiff agreed to deliver to the defendant, at a certain dock in Rhinebeck, in Dutchess county, 100 tons of hay, and as much more beyond that quantity as he had to spare, to be delivered pressed, between the day of the date of the contract and the last run of the sloops navigating the river; for which the defendant agreed to pay at the rate of *three shillings and sixpence* per cwt.—$100 to be paid in advance, and the *residue when the whole quantity should be delivered.* The defendant paid the [188] $100 advance. The plaintiff commenced the delivery of hay on 25th October, 1831, and delivered more or less every week until the river closed on the 9th December, when the whole quantity of hay delivered amounted only to 52 tons and 900 wt. The ordinary time of the closing of the river at Rhinebeck, is from 20th to 30th December. The defendant, in pursuance of a notice attached to his plea, *offered to prove* that after the making of the contract, the price of hay rose in the market to *eight shillings*, and from that to *ten shillings* per cwt., and that had the plaintiff performed his contract, the nett profits which the defendant would have made upon the hay undelivered, would have exceeded the sum claimed by the plaintiff for the quantity delivered; and he further offered to prove that he hired a store-house in the city of New York, for the reception of the hay, at a rent of $90, which he had been obliged to pay, and in consequence of the non-performance of the contract by the plaintiff, the store-house had been unoccupied and of no use to him: which evidence was objected to by the plaintiff and rejected by the judge. The defendant insisted that the plaintiff was not entitled to recover, 1, because he had failed in performance of the contract on his part, and 2, that at all events he could not recover under the common counts. The judge ruled that *the defendant having received a partial benefit*, the action lay without showing a full performance on the part of the plaintiff, and that a recovery might be had under the common counts; and he accordingly directed the jury that the plaintiff was entitled to their verdict for the value of the hay delivered at the contract price, deducting the $100 paid, with the interest of the balance from 9th December, when the river closed. The jury found a verdict for the plaintiff for $386.64. The defendant made a case and applied to the supreme court for a new trial, which was granted. (*See opinion of court*, 13 *Wendell*, 260.) On the application of the *plaintiff*, to enable him to sue out a writ of error, the rule granting a new trial was vacated, and judgment was entered for the defendant. The case was then, by agreement of the parties, turned into a *special verdict*, by which the jury were represented to find the contract as above stated, the payment of the ad- [189] vance of $100, the delivery of the 52 tons and 900 wt. and the closing of the navigation on the 9th December. The jury were also represented to find " that after the making of the contract, and in the course of the ensuing winter, the price of hay rose in the market to *eight shillings*, and from that sum to *ten shillings* per cwt.;" and the hiring of the store in New York, and the consequent loss to the defendant, were also set forth. A record being made up incorporating the *special verdict*, and rendering judgment thereon for the *defendant*, the *plaintiff* sued out a writ of error, removing the record into this court.

The cause here was argued by

     *S. Stevens*, for the plaintiff in error;

     *J. L. Wendell*, for the defendant in error.

        *Points insisted on by counsel for plaintiff in error:*

I. If a *part* of a quantity of goods, contracted to be delivered within a specified time, has been received by the vendee, and after the time has elapsed, he *retains the part delivered*, he thereby *accepts* of such part performance of the vendor, and is precluded from setting up the *entirety* of the contract against the claim of the vendor for the value of the part received. The entirety of the contract is disaffirmed *by the vendee's own act.* (*Bragg and others* v. *Cole*, 6 *Moore*, 114; 17

Champlin v. Rowley.

*Com. Law R.* 19.    *Oxendale* v. *Wetherell,* 9 *Barn. & Cress.* 386 ; 17 *Com. Law R.* 401.    *Lawrence and others* v. *Dale,* 3 *Johns. Ch. R.* 23.    *Champion* v. *Short,* 1 *Campb.* 53, *n.    Barker* v. *Sutton, Lent Assizes Norfolk, Trials per pais,* 369. *Waddington* v. *Oliver,* 5 *Bos. & Pul.* 61.    *Boone* v. *Eyre,* 1 *H. Black.* 273, *note a.* 1 *Saund.* 320, *b.    Chitty on Contracts,* 273. · 2 *Stark. Ev.* 640, 1, 2, 3.)

II. The condition in the agreement set up by the defendant, being in its nature *divisible,* the delivery of the whole quantity was not a *condition precedent.*   The rigid doctrine applicable to agreements for work and labor, does not control this case. (*Havelock* v. *Geddes and others,* 10 *East,* 555.    *Davison* v. *Gwynne,* 12 *id.* 381, 389.    *Bennet* v. *Ex'rs. of Pixley,* 7 *Johns. R.* 250.    *Tompkins* [190] v. *Elliott,* 5 *Wendell,* 496.    1 *Chitty on Pl.* 314.)

III.   The plaintiff was guilty of no *laches,* but was proceeding to deliver the hay in the ordinary manner of performing such agreements, when his further and full performance was rendered impossible *by the act of God,* viz., the closing of the river at an unusually early period. (1 *Saund.* 216, *n.* 2.    *Mounsey* v. *Drake,* 10 *Johns. R.* 27, *and cases cited.    Taylor and Otis* v. *Bullen,* 6 *Cowen,* 627, *per Spencer, J.    Buller's N. P.* 164, *Hesketh & Gregg Tr.* 27 *G.* 2.) [*a*]

IV.   General *indebitatus assumpsit* is the proper and only remedy in this case. *Tuttle* v. *Mayo,* 7 *Johns. R.* 132.    *Linningdale* v. *Livingston,* 10 *id.* 36.    *Burdick* v. *Green,* 18 *id.* 14.    *Dubois* v. *Del. & Hudson Canal Co.,* 4 *Wendell,* 285. *Jewell* v. *Scroeppel,* 4 *Cowen,* 564.    *Farran* v. *Nightingale,* 1 *Esp. R.* 639. *Towers* v. *Barrett,* 1 *T. R.* 133.    1 *Chitty on Pl.* 338.)

V.   The defendant cannot, *in this suit,* show that he has sustained the damages alleged in his notice, "in mitigation" of the plaintiff's claim.    *That* is proper only in cases where the value of the *identical commodity* sold is less than the price agreed on, and the vendor has practised some fraud or deceit in relation to its nature or quality.    Such damages are not admissible as a *set-off,* the amount being altogether unliquidated. (*Farnsworth* v. *Gerrard,* 1 *Campb* 38. ·*Reab* v. *McAllister,* 8 *Wendell,* 142, 3, *per Chancellor.    Butts* v. *Collins,* 13 *id.* 139.    2 *Starkie's Ev.* 639 to 645.)

*Points insisted on by counsel for defendant in error:*

I. The plaintiff below was not entitled to maintain an action of *assumpsit* for the hay delivered by him ; he could not maintain the action on the *express contract,* because, by the terms of that contract, he was not to be paid *until the whole quantity* was delivered ; nor could he maintain it on an *implied contract,* because a contract cannot be *implied,* where goods are sold under an *express contract,* which continues in force and unrescinded.    2 *Phil. Ev.* 83, *n.*    1 *Saund.* 320, *b.    M'Millan* v. *Vanderl·p,* 12 *Johns. R.* 165.    *Jennings* v. *Camp,* [191] 3 *id.* 94.    *Ketchum* v. *Evertson, id.* 365.    *Stevens* v. *Beard,* 4 *Wendell,* 604. *Whitney* v. *Sullivan,* 7 *Mass. R.* 109.    *Champlin* v. *Butl r,* 18 *Johns. R.* 160. *Robertson* v. *Lynch, id.* 451.    *Reab* v. *Moor,* 19 *id.* 341.    *Clark* v. *Smith,* 14 *id.* 326.

· II. If the plaintiff below was entitled to maintain his action, the defendant had a right to give evidence of loss or damage sustained by him in consequence of the plaintiff's default in delivering the whole quantity of hay contracted to be delivered ; and if so, it is manifest that the loss of the defendant far exceeded the claim of the plaintiff, for the quantity of hay delivered. (*McAllister* v. *Reab,* 4 *Wendell,* 483, *and* 8 *id.* 109, *S. C., in the court for the correction of errors.*)

After advisement, the following opinion was delivered :

By the CHANCELLOR.    This is an action to recover compensation for the value of hay delivered in part performance of a contract to deliver a larger quantity, and to be paid for when the whole was delivered.    From the facts stated in the special verdict, there is no doubt that the non-performance of the contract in full, has never been waived by any act of the defendant ; and it is also very probable,

_____

(*a*) Sed vide 2 *Saund. R.* 422, *a.*

Champlin v. Rowley.

from the facts stated in the special verdict, that he must have sustained considerable damage by the non-delivery of the residue of the hay, according to the contract. It is not found by the verdict that the plaintiff offered to deliver the residue of the hay after the time specified in the agreement, or that he ever requested the defendant to return the hay which had been actually delivered. Neither was that necesssary, if some of the recent cases in England on this subject can be considered as law in this state. In *Oxendale* v. *Wetherell*, (9 *Barn & Cress.* 386,) it was held that the party who had failed to perform his contract could recover against the other, who had not been in fault, for the wheat delivered in part performance of his agreement, unless the defendant had returned the wheat delivered. This decision, carried to the extent it was in that case, cannot be considered as [192] good law anywhere ; for it is not founded upon any equitable principle, and is contrary not only to justice, but also to common sense. The only way I can account for it, is upon the supposition that the facts of the case are not properly stated in the report ; or that the injustice of requiring the party who was not in fault to be at the expense of returning to the other party bulky articles of this description, or even of seeking him for the purpose of making an offer to return them, to protect himself from an action, was not presented to the consideration of the court. Again : in that case, as in this, the contract was not to deliver the whole quantity at one time, but to deliver the whole within certain a specified period. Neither was there any agreement, either express or implied, 'that the defendant should not be permitted to sell or use the several parcels, delivered from time to time, until the latest period for completing the contract had actually expired. Here the contract was to deliver a large quantity of pressed hay upon the dock at Rhinebeck, between the twelfth of September and the closing of the navigation on the river ; from which it is fairly to be inferred, that it was understood by both parties that it was to be transported from thence to the market where such an article as pressed hay was used, by water, and while the river remained open. The plaintiff, therefore, was not bound to take all the hay to the dock at once ; but the defendant, by his contract, was bound to receive it in reasonable parcels, as it was brought to the place appointed for the delivery within the time specified. (*Lewis* v. *Weldon*, 3 *Rand. R.* 71.) Neither is it the sensible construction of this agreement, that the defendant was to keep the fifty-two tons of hay on hand at Rhinebeck dock, until after the navigation closed, for the purpose of seeing whether the other party intended to perform his agreement as to the delivery of the residue. The idea of founding an action upon the neglect of the defendant to return the hay delivered in such a case, therefore, is not founded in good sense. And I confess I can see no ground for the distinction which has been established by the English cases, since the revolution, between the part performance of a contract for labor and a partial performance of a contract for the delivery of [193] specific articles under such an agreement as this. If the fifty-two tons of hay delivered under this contract were in New York at the time the navigation closed, as it may fairly be presumed they were, if the defendant had paid a reasonable attention to his own interest, or if the wheat in the case of *Oxendale* v. *Witherell*, had been sold or converted into flour before the failure of the plaintiff to perform the residue of his contract, it would be about as unreasonable to require the defendant to return the hay to the plaintiff as it would be to return the fruits of the labor of a man who had neglected to perform his contract for labor in full.

If any action can be sustained in such a case, by the party who has failed to perform his contract, without any fault or acquiescence or waiver of a strict performance by the party who has received the benefit of the part performance, it must be upon the equitable principle recognized by the supreme court of New Hampshire in *Button* v. *Turner*, (6 *N. Hamp. R.* 492.) The principle adopted in the case referred to is, that it is unconscientious and inequitable for a party who has been actually benefited by the part performance of a contract, above or

Champlin v. Rowley.

beyond the damages he has sustained by the non-performance of the residue of the agreement, to retain this excess of benefit without making the other party a compensation therefor; and that this excess of benefit arising from the part performance of the other party, forms a new consideration, upon which the law implies a promise to pay for the same, and which excess of benefit, therefore, may be recovered in the equitable action of assumpsit. But if the nature of the part performance is such that the other party can reject the benefit received therefrom, as by offering to return specific articles received in part performance, but not actually converted or used, he is at liberty to do so, and to reserve his remedy for the non-performance of the contract. Courts of equity sometimes act upon a similar principle in relieving a party against a penalty or forfeiture arising from misfortune or the neglect of a party to perform his agreement; and perhaps in some cases it has been done where the forfeiture was incurred wilfully and intentionally, without any pretense of excuse arising from [194] mistake or inability to perform. With the exception of this last class of cases, if courts of justice were at liberty to make new laws instead of administering those which are already in existence, and upon which the contract of the parties litigant are supposed to be founded, or if this was a new question upon which a court in this state was now to pass for the first time in settling a principle upon the flexibility of the common law as applied to new cases, I see no reasonable objection to the transferring these principles of the court of chancery to courts of common law, in cases of mere personal contracts, not founded upon agreements relative to the sale or transfer of an interest in real estate. But I consider this question as settled in this state, by a uniform course of decisions for the last twenty-five years, during which time the laws have undergone a most thorough revision by the legislature, without any attempt to change the law in this respect, as settled by the supreme court. I think it belongs, therefore, to the legislature, and not to this court, to make a change in the law in this respect, if such a change is deemed to be expedient and useful to the community. The only possible objection I can perceive to such a change is, that it may be a strong temptation to negligence in the performance of personal contracts, as the known practice of the court of chancery unquestionably is with respect to agreements for the sale or purchase of real property. The conclusion at which I have arrived on the question as to the plaintiff's right to recover at all in such a case, which was the principal question before the supreme court, entitles the defendant to a judgment upon this special verdict, upon the facts found thereby.(a)

(a) The judgment of the supreme court, now *affirmed* upon writ of error by the court of dernier resort in this state, being in direct conflict with the case of *Oxendale* v. *Witherell*, (9 *Barn. & Cress.* 386,) decided in the king's bench of England in 1829, the following review of the cases cited and urged in argument by the counsel for the plaintiff in error, in support of the decision of *Oxendale* v. *Witherell*, is submitted by the reporter to the profession.

The first case which will be noticed is that of *Barker* v. *Sutton*, decided at the Norfolk assizes in 1662, found in *Comyn's Dig. tit. Action*, (*F*. 2.) This case was decided at a time when the courts almost invariably founded their construction of the *dependency* or *independency* of covenants and agreements on artificial and subtle distinctions, without regarding the intent and meaning of the parties, and too often held agreements in contracts of the kind in question as *independent*, contrary to the real sense of the parties and the true justice of the case, so that where there were covenants on both sides, and an action was brought by one party for the non-performance of the other, he was permitted to recover, although the plaintiff had wholly failed to perform the stipulations on his part, and the only remedy allowed to the defendant was a cross-action. This was the principle of the decision in *Barker* v. *Sutton*, as is manifest from the report of the case in *Trials per pais*, 499. The principle of that decision has, however, long since been repudiated both in England and in this state, and the rule now is, that covenants. &c., are to be construed to be either *dependent* or *independent*, according to the intention and meaning of the parties, collected from the terms of the contract and the good sense of the case, without regard to technicalities or the collocation of the several stipulations. The case of *Barker* v. *Sutton* came under the review of the supreme court of this state, in *McMillan* v. *Vanderlip*, (12 *Johns. R.* 165,) and was refused to be recognized as law. It is believed that from the time of the decision of *Barker* v. *Sutton*, in 1662, until the argument of the case of *McMillan* v. *Vanderlip,*

Champlin v. Rowley.

[195]    If, however, the majority of the court should happen to differ with me
      in opinion upon this question, there are great difficulties in the case arising
from the form in which the parties have thought proper to bring the case before
this court. It appears, from the opinion of the supreme court, that the case was
argued there upon a bill of exceptions, and that a new trial was awarded. In
that court two questions were presented, either of which, if decided in favor of
the defendant, was sufficient to sustain the judgment awarding a *venire de novo.*
The parties have, however, by consent I presume, changed the form of the
record; and it now comes before us in the shape of a special verdict, without
any new trial actually had, and without arguing the case again before the
supreme court in that shape. I see no objection to this course, so far as the
      special verdict presents the same questions which were argued and passed
[196]  upon in the supreme court, and entitled the parties to the same judgment
      here. One of the questions upon which the supreme court passed, in the
shape in which the cause was brought before them, was, that even if the plaintiff
was entitled to recover, the circuit judge was wrong in refusing to receive evi-
dence of the amount of damages which the defendant had sustained by the non-
delivery of the residue of the hay, according to the contract. In this, I think,
the decision of the supreme court was clearly right. The claim for the reduc-
tion was not in the nature of a legal set-off, which the party was only entitled to
under the provisions of the statute on that subject. But it was founded upon the
principle, that it would be unjust and inequitable to permit the party who had

---

in 1815, a period of 153 years, that case was never cited as an authority or acted upon by a court,
until the trial of this cause in 1832. (See also a *note* to the case of *Champion* v. *Short,* 1 *Campb.* 53.)
   Next in order is *Boone* v. *Eyre,* reported in a *note* to the case of *The Duke of St. Albans* v.
*Shore,* (1 *H. Black.* 373.) Here, probably from considerations of the hardship of the case,
*Lord Mansfield* was induced to lay down the rule, that "where mutual covenants go only to a
part of the consideration, where a breach may be paid for in damages, then the defendant has a
remedy on his covenant, and shall not plead it as a *condition precedent.*" This rule, though
perhaps it may be justified as applied to a question of special pleading arising on demurrer, it
is humbly submitted, is indefensible when sought to be applied in settling the rights of parties
on the merits, on the trial of a cause. The result of the rule is, that the *dependence* or *inde-*
*pendence* of covenants is to be determined, not by a construction of the contract itself, but by
facts subsequently transpiring, although there be no waiver of performance of a condition pre-
cedent; that although when the contract is entered into, the covenants go to the whole con-
sideration on both sides, are mutual conditions, the one precedent to the other, yet that the
fact of a *part performance* destroys the whole character of the contract, and renders that an
*independent* which was before a *dependent* covenant. This case, although recognized as good
law in *Campbell* v. *Jones,* (6 *T. R.* 572,) was virtually overruled in *Glazebrook* v. *Woodrow,* (8 *id.*
366); and even *Campbell* v. *Jones* was not wholly founded upon it. It was, however, subse-
quently recognized in England in 10 *East,* 306 and 564, and in 12 *id.* 387, and was acted upon
in this state in 7 *Johns. R.* 250, 7 *Wendell,* 112, and 11 *id.* 67; but, in almost every case in
which it has been recognized, it has been conceded by the judges, that if the terms of the con-
tract be such as to leave no doubt of *the intention of the parties that performance should precede
payment,* the courts cannot do otherwise than to carry such intention into effect.
   *Waddington* v. *Oliver,* (5 *Bos. & Pul.* 50,) or at least the latter clause of the opinion de-
livered in that case, was also relied on by the counsel for the plaintiff in error. In this case,
an agreement was entered into in September, 1804, whereby the plaintiff agreed to sell to the
defendant 100 bags of hops, at 56 shillings per 100, to be delivered before the *first of January,*
1805. On the twelfth day of *December,* the plaintiff delivered 12 bags, and on the next day
brought a suit for the recovery of the value of the hops delivered. It was held by the court
that the action did not lie, that the contract being entire, could not be split up, and that an
action would not lie *until the whole quantity was delivered,* or *until the time for delivering the
whole quantity had arrived.* If the case be correctly reported, and the court in the latter clause
of the opinion meant to say, that the plaintiff would be entitled to his action by showing
a delivery of *part* of the hops, provided he waited to bring his action until the time should have
elapsed in which the whole quantity was to have been delivered according to the terms of the
agreement, then it is but a repetition of the rules laid down in *Barker* v. *Sutton,* viz: "Rule 3.
The *time being past,* it is now a duty, and *indebitatus assumpsit* lies," and "Rule 4. The de-
fendant has his remedy for *non-delivering the residue,*" which rules, it is trusted, have been
shown to have been long since exploded. It is supposed, however, that perhaps the whole
difficulty of this case is attributable to a typographical error in the printing of the word OR, for
the word NOR, in the concluding paragraph of the opinion; for it is incredible that the court

Champlin v. Rowley.

violated his contract to recover the full value of the hay delivered, without making the other party, who was not in fault, compensation for the injury he had sustained by the non-performance of the agreement. If the supreme court were right upon this question, but wrong upon the other, there is [197] nothing in the special verdict from which we can ascertain whether the plaintiff or the defendant is entitled to judgment upon the facts found, or whether the damages which appear to have been given by the jury for the plaintiff hypothetically, are the proper amount to be recovered upon the facts found. It does indeed appear, by computation, that the amount of the damages inserted in the special verdict is the whole value of the hay delivered at the contract price, with interest thereon, to the *quarto die post*, deducting the $100 paid by the defendant in advance. But whether the injury the defendant received by the non-delivery of the residue of the hay, together with the $100 thus paid in advance, was more or less than the amount of the 52 tons delivered at the contract price, no where appears, even by inference from the facts proved. A special verdict should draw the conclusions of fact from the evidence; and not find mere evidence, and leave it to the court to draw the conclusions [198] therefrom. If the parties meant that it should be inferred that the injury to the defendant was more than the value of the hay delivered, they should have said so in the special verdict in express terms. In that case, the conclusion of law upon the facts would have been plain; and the defendant would have been entitled to judgment upon the special verdict on this last point, whatever had been the decision of this court upon the first. The value of hay in market in the city of New York in the course of the ensuing winter, is no evidence of what it could have been purchased for there, immediately after the river closed, which is the proper time for computing its value. But even from that should be deducted what it would have cost the defendant to transport the hay from Rhine-

---

meant to lay down the position, that the right of action, which depended upon the delivery of the *whole quantity*, could accrue by the delivery of a *part* and the *mere lapse of time*. In *M'Millan* v. *Vanderlip*, the late Chief Justice Spencer observed, in reference to this last clause in the opinion in *Waddington* v. *Oliver*, that he could not perceive the grounds on which it rested; and perhaps it is not too much to add that they are not discoverable by human intellect. When the time for performance is elapsed, and the default of the party is consummated, upon what principle of law can it be said that he has then a right of action which he had not before?

*Linningdale* v. *Livingston*, (10 *Johns. R.* 36,) was also cited. The decision in this case does not recognize the principle of the case of *Oxendale* v. *Witherell*, but is founded on the familiar principle that where *performance* in full on the part of the plaintiff has become impossible *by the act of the defendant*, and there has been a *performance in part*, an action lies. Chief Justice Spencer, in subsequently commenting upon this case in *Jennings* v. *Camp*, (13 *Johns. R.* 97,) says, that " the position" laid down in that case " never was intended to embrace the case of a *wilful dereliction of the contract* when partly executed, by one of the parties, without the assent and against the will of the other." The counsel for the plaintiff in error also cited *Bennett* v. *Pixley's ex'rs*, (7 *Johns. R.* 250,) and *Tompkins* v. *Elliot*, (5 *Wendell*, 496.) In the first of these cases, it is conceded that the court repose themselves on the decision in *Boone* v. *Eyre*, respecting which the reader is referred to the observations made above; but in the second case, though *Boone* v. *Eyre* is referred to, the decision of the court is expressly put upon the ground that the covenants were *independent*.

The *note* of Serjeant Williams, attached to the case of *Pordage* v. *Cole*, (1 *Saund.* 320,) is the only remaining authority cited, upon which an observation will be ventured. It is gratefully admitted that the best rules as to the construction of covenants, &c., whether *dependent* or *independent*, with which the profession have been favored, are to be found in this note. The learned annotator has done much to scatter the mist in which the subject was involved, but it is respectfully submitted, when he laid down his *third general rule*, as deduced from the case of *Boone* v. *Eyre*, that he was not as successful as he was in respect to his other rules: for if it be true that it is the duty of courts to carry into effect the contracts of parties, then in a case where it is manifest upon the most liberal construction of the contract itself, and even taking into view a part performance of the contract as evidence of intention, that it was *the intent and meaning of the parties that performance should precede payment*, the rule of Serj. Williams that a *part performance* will authorize an action, and that the opposite party is driven to his suit to recover damages for the *non-performance of the residue*, cannot be law.

beck to New York, had it been delivered before the navigation closed. [199] Without these facts, it is impossible for any person to infer that the injury to the defendant was more than the value of the hay delivered.

If the question had come before the supreme court on this special verdict, and the defendant was right in his first point as well as the second, the judgment should as now have been in his favor, notwithstanding the defective finding of the facts as to the last point. But if he was wrong as to the first point and right as to the last, then a *venire de novo* should have been awarded; and if that court had given *judgment* for either party erroneously, instead of awarding a *venire de novo*, this court, upon a writ of error, would have corrected the proceeding, and would have given such judgment as the court below ought to have given. But as the question upon the defective finding has never been before the supreme court for its decision, we cannot reverse the judgment on that account.

If the majority of the court agree with me in the conclusion at which I have arrived upon the first point, the judgment should be affirmed; but if they agree with me upon the last point, and not upon the first, the writ of error should be dismissed; so that the plaintiff in error may seek his remedy, if he has any, by an application to the supreme court.

For the reasons before stated, I must vote for an affirmance of the judgment.

On the question being put, *Shall this judgment be reversed?* the members of the court divided as follows:

*In the affirmative:* Senators BECKWITH, J. P. JONES, LOOMIS, PAIGE, SPRAKER, TALLMADGE, WAGER, WILLES, WORKS—9.

*In the negative:* The PRESIDENT of the Senate, the CHANCELLOR, and [200] Senators ARMSTRONG, J. BEARDSLEY, L. BEARDSLEY, DOWNING, EDWARDS, FOX, JOHNSON, H. F. JONES, LACY, McLEAN, POWERS, STERLING, TRACY, VAN DYCK—16.

Whereupon the judgment of the supreme court was AFFIRMED.