## WOOD *vs.* GENET.

Where real estate was conveyed to a feme covert, by her mother, previous to her marriage, and a judgment was afterwards recovered against the grantee and her husband as heirs at law of the mother, upon the ground that the deed was fraudulent, which judgment was subsequently reversed by the court for the correction of errors; and before such reversal the land was sold under the judgment, and the husband received a considerable sum for the surplus money on such sale; *Held*, that the wife who had recovered back her land from the purchaser subsequent to the death of her husband, was not liable to such purchaser for the surplus moneys received by her husband on the sale, nor for the value of the improvements made

1840.

Wood
v.
Genet.

upon the premises while they were held adversely to her and her husband under the sheriff's sale; but that the value of permanent improvements might be offset against her claim for mesne profits.

Where the estate of a feme covert is sold on a judgment, recovered against her as an heir or devisee, her husband at law is entitled to receive from the sheriff the surplus moneys raised on the sale, beyond the amount of the debt and costs; and she cannot be made personally liable for such surplus moneys, although the sale should afterwards be found to be invalid and inoperative to convey the legal title of the land to the purchaser. Nor can her separate estate be made liable for such moneys, except so far as they have been applied for the benefit of such estate.

Whether a court of equity can protect the surplus moneys arising on a sale of the real estate of a feme covert, upon a judgment and execution against her and her husband, so as to prevent its going into the hands of the husband for his own use without any provision for her support out of the same, *Quære?*

March 3.      THIS case came before the court upon demurrer. The complainant alleged in his bill that the Manhattan Company, in January, 1818, recovered a judgment in the supreme court against the defendant and others, as the heirs and devisees of Maria Osgood, deceased, for $7654,62; to be levied of the lands and tenements whereof W. F. Osgood, Martha B., the wife of E. C. Genet, Julianna, the wife of S. Osgood, and Susan K. Osgood, and each of them, at the time of the commencement of that suit, in October term, 1815, had as well by descent as devise from Maria Osgood; and that by virtue of an execution on that judgment, the sheriff of New-York sold lot number eleven, in Cherry-street, in that city, to S. Sterling, for $7200, and lot number seventeen, in the same street, to another person, for $5550; and conveyed the lots to the respective purchasers, as lands which he supposed he was authorized to sell by virtue of that judgment and execution, as having come to the defendants in the judgment by devise or descent from Maria Osgood. The bill further charged that the two lots thus sold formerly belonged to Maria Osgood, the mother of the present defendant, who conveyed lot number eleven to the defendant, in May, 1814, and lot number seventeen to Susan K. Osgood, another of her daughters, about the same time, in consideration of natural love and affection; that shortly after these convey-

ances the defendant intermarried with E. C. Genet, now deceased ; and that subsequent to the marriage, but in the same year, Maria Osgood died, and by her will devised her residuary estate, both real and personal, to her children Martha B. Genet, Julianna Osgood, W. F. Osgood and Susan K. Osgood. The complainant further charged in his bill, that at the time of making the conveyances to her daughters, the grantor was indebted to divers persons, and among others, to the Manhattan Company, for the demand upon which the judgment was subsequently recovered against her heirs and devisees ; and upon the trial of the cause in which that judgment was recovered, upon a plea that the defendants had nothing by descent or devise from Maria Osgood, the deed from her to the present defendant was given in evidence, on the part of Mrs. Genet and her husband ; and that a distinct question before the jury on the trial of that issue was, whether that deed was not fraudulent or void as against the Manhattan Company and other creditors of Maria Osgood, and whether the lot number eleven was not assets by descent or devise in the hands of the defendants in that suit, or some of them ; and that the court and jury, on the trial of that issue, decided that the deed was fraudulent and void, and the jury gave a verdict for the plaintiffs, upon which the supreme court afterwards rendered the judgment upon which these lots number eleven and seventeen were afterwards sold by the sheriff. The bill further charged that E. C. Genet, the husband of the defendant, acting in behalf of his wife as well as himself, at or previous to the sheriff's sale, entered into a written agreement with Susan K. Osgood, the grantor of lot number seventeen, by which the said E. C. Genet and S. K. Osgood agreed to divide between them, in proportion to the respective values of the two houses, any surplus which might remain in the sheriff's hands, after satisfying the judgment and costs, and that the whole surplus should be paid into the hands of S. Cox for that purpose ; who received the same from the sheriff accordingly ; and that E. C. Genet afterwards received from Cox $3253,57 as his pro-

portion of such surplus moneys. The bill then stated that the complainant, in February, 1822, purchased lot number eleven of the estate of Sterling, and in April thereafter obtained a conveyance therefor, from the widow and one of the adult heirs and from the guardian of two of the heirs who were infants; and that he thereupon took possession of the premises, and continued in the receipt of the rents and profits until he was turned out by virtue of a writ of possession, in January or February, 1838, issued upon the judgment thereon mentioned; that after the sale by the sheriff, the defendant in the judgment under which the sale took place, brought a writ of error upon that judgment, and the same was reversed by the court for the correction of errors, upon the ground that incompetent and improper evidence had been received upon the trial of the cause, and not on the ground that the deed to the defendant in this suit was valid; that in 1824, an action of ejectment was commenced in the supreme court against the complainant in the name of James Jackson, for the recovery of lot number eleven, upon the joint demises of E. C. Genet and his wife and upon a separate demise of the son of the said Genet, under which last demise, however, no evidence was given at the trial; that two verdicts rendered in that suit were upon subsequent proceedings there set aside; and that finally a verdict was, in 1833, found for the plaintiffs therein, upon which the supreme court gave judgment against the present complainant; which judgment, in December, 1837, after the death of E. C. Genet, was affirmed by the court for the correction of errors. The complainant also stated in his bill that E. C. Genet, the husband of the defendant, died in July, 1834, and devised to her all his real and personal estate, and appointed her his sole executrix; but whether he left any estate, either real or personal, at the time of his death, was not stated in the bill. The complainant further stated, that during his possession of lot number eleven, he had made permanent improvements thereon to a large amount; that the defendant had taken possession of the premises under the judgment in eject-

ment, and had received some part of the rents accrued thereon ; and that she was about to commence proceedings against him under the statute for mesne profits ; that the surplus moneys received upon the sale, as the complainant insisted, properly and equitably payable to Genet and his wife, under the deed to her from her mother, and were therefore received by the husband, as well for and on account of his said wife and in trust for her, as representing her interest in the premises, as on his own account ; and and that the same were applied by him to the joint benefit of himself and his wife *according to their respective rights therein;* and that the complainant therefore was equitably entitled to receive from the surplus moneys which her husband received upon the sale, with interest thereon, upon the complainant's accounting for the rents and profits of the premises for the period allowed by law. He therefore insisted by his bill, that he was entitled to offset his permanent improvements upon the premises against the six years' rents and profits allowed by law ; and to be paid by her the surplus moneys upon the sale, with interest thereon. And he prayed that she might be decreed to pay him such surplus moneys, with interest thereon from the time the same were received by her late husband, upon his accounting for the rents and profits of the premises for the period allowed by law, after offsetting the value of his permanent improvements against such rents and profits. He also prayed for a preliminary injunction restraining her from proceeding at law for the recovery of the mesne profits of the premises, or from selling or disposing of such premises until the final decree of the court in this suit.

To this bill the defendant demurred, and assigned for causes of demurrer : *First,* That the complainant showed no equitable title to the relief sought by his bill ; *Secondly,* That he had a perfect and adequate remedy at law for any relief to which he was entitled upon the case made by his bill ; and *Thirdly,* That he had not by his bill made or stated such a case as in equity entitled him to the relief prayed therein.

*B. F. Butler*, for the complainant.

*S. Stevens*, for the defendant.

THE CHANCELLOR. Upon the argument of this cause, it was understood that the decision of the court should be suspended for the purpose of enabling the complainant to propose some formal amendments to his bill, which it was supposed the other party would probably agree to, for the purpose of having the case decided upon its merits only. But as a year and a half has since elapsed, and no application has been made to amend, I must consider the complainant as having abandoned the right to apply to amend this injunction bill. I shall therefore proceed to make a final decision upon the bill in its present form.

One of the objections made upon the argument by the defendant's counsel was, that the bill did not show that the complainant had acquired the title to lot number eleven, which the sheriff's deed professed to convey to J. Sterling. The defect in that part of the bill is, that the complainant alleges that he bought the premises of the estate of Sterling, and took a conveyance from his widow and one of his children, and from the guardian of two other children ; without stating whether these were all the heirs at law of Sterling, or whether the title to the property came to them by devise or descent ; and without showing any authority to the guardian to sell the real estate of his infant wards. The objection to the complainant's title in this respect is certainly well taken, even if it should be conceded that the grantee of the whole of Sterling's legal claim or interest, in the lands sold by the sheriff, would by a mere conveyance of the land itself become the assignee of any equitable claim which Sterling might have had against Genet or his wife to refund the surplus moneys received from the sheriff, on the sale of a lot to a purchaser who acquired no legal title under the judgment and execution.

The bill is not properly framed to obtain relief under the act of April, 1813, relative to judgments and executions,

(1 *R. L. of* 1813, *p.* 504,) even if the last clause of the eleventh section of that act extended to such a case ; as that statute contemplated a proceeding in which the plaintiffs in the judgment, as well as the persons against whom the execution was issued, should be made parties. Besides, that statute merely authorized a suit at law in the supreme court, by an original writ returnable in that court. Again : the revised statutes, which were in force at the time this eviction took place, give to the purchaser or his assigns, who have been evicted by reason of the reversal of the judgment upon which the real estate was sold, a remedy against the party for whose benefit the same was sold, in a suit at law to recover back the purchase money and interest. (2 *R. S.* 376, § [68,] 72.) Whether the complainant has not a perfect remedy in this case against the Manhattan Company, for whose benefit the sale was made, to recover back the whole purchase money and interest, is a question which does not arise here. But it is clear that no such remedy is given by the statute, either at law or in equity, against Mrs. Genet ; for the judgment was not against her personally, neither was this lot sold for her benfit. The execution was only against such real estate as had come to her by devise or descent from her mother. She therefore had no interest in, neither was she in any way personally benefitted in having this lot, which belonged to her under the deed of May, 1814, sold for the payment of her mother's debt. There is no allegation in the complainant's bill that the conveyance to her was actually fraudulent, or that her mother at the time of that conveyance had not other property which was sufficient to pay all her debts. The only averment in the bill is, that upon the trial of the issue in the original suit, against the heirs and devisees of Mrs. Osgood, the court and jury, upon the legal and illegal evidence then produced, decided that this conveyance was fraudulent. But by a reference to a report of that case, it will be seen that a part of the illegal evidence which was received at the circuit, and for the improper admission of which the judg-

ment was reversed by the court for the correction of errors, was evidence introduced for the purpose of shewing that Mrs. Osgood was insolvent at the time of giving these conveyances to her children, and that such conveyances were therefore fraudulent and void against her creditors. (*Osgood* v. *The Manhattan Company*, 3 *Cowen's Rep.* 612.) The court of dernier resort having reversed the judgment, because illegal and improper evidence had been submitted to the jury to prove that the grantor was insolvent when the deed was given, the verdict of the jury which was produced in part at least by such illegal testimony, even if the jury had declared in terms that the deed was fraudulent, must necessarily fall with it ; and would be no evidence of fraud in any future litigation. And such was the decision of the court for the correction of errors in the ejectment suit when the case was last before it in December, 1837. (*Wood* v. *Jackson, ex dem. Genet and others*, 18 *Wend. Rep.* 107.) The complainant therefore has no pretence of claim, either at law or in equity, against Mrs. Genet, to recover back any part of the purchase money paid by Sterling upon his purchase of lot number eleven at the sheriff's sale ; unless she is legally chargeable with the act of her husband in receiving the surplus moneys raised on that sale. That question I will now proceed to consider.

At the time of the sheriff's sale, Genet, by virtue of his marriage, had a life estate in his wife's real property. And if any part of her real estate was legally sold upon an execution against her, he had also by virtue of such marriage full power and authority to receive any surplus money which might be raised on such sale ; and to apply it to his own use, as a part of her personal property accrued by act and operation of law. It is even doubtful whether a court of equity could have protected it for her use, as against the husband and his creditors, where it had not been previously secured to her for her separate use. It is evident, therefore, that she could not in any way have prevented her husband from receiving this surplus money, which was raised by the illegal sale of property in which he had a

life interest; and I am not aware of any legal or equitable principle upon which she can be made liable to refund money thus received by her husband, and which it is not pretended by the bill has been applied for the benefit of her separate estate. As it is perfectly well settled that a feme covert cannot bind herself, personally, by any contract or agreement, although she may make an agreement which will bind her separate estate in the hands of a trustee, it is unnecessary to cite authorities to show that the husband cannot bind her personally, by any act of his. The averment in the bill " that the money was received by the husband in trust for her, and as the representative of her interest, and that it was applied by him to the joint benefit of himself and wife, according to their respective rights and interests therein," was not intended as an averment of a fact to be sworn to by the complainant; but it is stated by the pleader as a mere conclusion of law which he attempts to draw from the facts previously charged. Besides : the averment that the money was applied by the husband to the joint benefit of himself and his wife *according to respective rights therein,* amounts to nothing even as an averment of a fact; as she had no right whatever in the surplus raised on this sale. And as I have before said, the whole surplus, even upon a valid sale of the wife's property, would belong to the husband; subject at most to the wife's equity to a support out of the same.

It is unnecessary to inquire whether any relief could be obtained against her, as executrix of her husband, as there is no prayer in the bill under which any relief can be given against her in that character ; neither is it alleged that any thing has come to her hands as the executrix or as the re-residuary devisee of her husband. The mesne profits belong to her in her own right, as the survivor of her husband, as a part of her property which he had not reduced to possession in his lifetime, and which therefore do not belong to his creditors.

It was not necessary for the complainant to come into this court to obtain an offset of the permanent improvements

which he has made upon the premises, against the defendant's claim for mesne profits ; as he has a perfect remedy in that respect in the proceedings at law. (2 *R. S.* 311, § 49.)

As the complainant upon the case made by his bill is not entitled to any discovery or relief of which he can avail himself, either in this court or elsewhere, under the very special prayer contained in that bill, the demurrer must be allowed and the bill dismissed with costs. And the injunction issued in the cause must be dissolved ; if the order to that effect has not already been entered.