*158 By the Court.
Duer, J.
The contract between the parties in this case, as evidenced by the sale-note, was very plainly an agreement to sell, and not a sale: it was not executed,'' but execu-tory. It is quite true that in many cases a sale of goods may operate by force of the language of the agreement, as an immediate transfer of the right of property, although the goods are not delivered, and the price remains unpaid: but this is only when by the terms of the agreement, the sale is immediate and absolute, so that the buyer, upon tender of the price, mayat once demand possession of the goods, and the seller, upon tender of the goods, the payment of the price, When the sale, however, is not absolute, but conditional, and the delivery of the goods depends upon a contingency, all the cases and authorities show, that until the contingency happens, no title whatever passes to the buyer, but the goods remain the sole property and at the sole risk of the seller. And this, where such is the nature of the contract, is so manifestly the intention of the parties, that it would be strange, indeed, had a different construction ever prevailed. In the case before us, not only the delivery of the goods but the amount of the price to be paid for them, depended on a contingency, namely, the market value of bleaching powders of the quality described at the time of their arrival.
In all cases of a sale of gpods when by force of the terms of the contract an immediate title vests in the buyer, the goods are from that time solely at his, risk, and hence if the argument for the plaintiffs were well founded, it would follow that had the bleaching powders which they bought, been totally lost at sea, they as owners must alone have borne the loss, and would have been bound to have paid the defendants in the notes of Leggett & Bros., even had the credit of that firm been such that a payment in their notes would have been equivalent to a payment in cash. It was, however, admitted by the counsel for the plaintiffs that the non-arrival of the powders would have defeated the contract, and that by the known and invariable construction of a sale of goods to arrive, the goods until arrival, are at the sole risk of the seller — and this admission of the counsel, it seems manifest to us, was fatal to his argument, that the contract of sale in this case operated per se as a transfer of the property. As it is certain that until their arrival, the bleaching powders were at the sole risk of *159 tbe defendants, it is equally so, that until tben they were the sole owners, and it is a necessary consequence that until then the plaintiffs were the sole owners of the notes that the defendants were to receive in payment. Whether it is not also a necessary consequence, that the notes until then were at their risk — that is, that until then they took upon themselves the risk that circumstances might happen to render the notes worthless before the time for their delivery in payment arrived — is the question that remains to be considered; and this, stated in a somewhat different form, we consider to be the true and only question in the cause.
The question in the form that we adopt is, did the known and declared insolvency of the firm of Leggett and Bros, before the arrival of the goods, release the defendants from their obligation to perform their agreement, or were they still bound to deliver the powders to the plaintiffs, and accept in payment the notes that were tendered ?
It is needless to inquire what would have been the effect of the failure of Leggett & Bros., had it taken place' after the arrival of the ship, and before a delivery of the goods had been demanded, since although the exact time of their arrival is left in some uncertainty, it is admitted that it took place some days after the failure of that firm was known and declared. If the defendants were bound to part with their property, and accept in payment the notes of an insolvent firm, that obligation arose, either from the peculiar words of the contract of sale, or from a general rule applicable to every contract of sale with a provision that the notes of a third person shall be received in payment.
There is scarcely a pretence for saying that the obligation in this cas_e arose from the peculiar words of the contract, for the words “without recourse” which are all that are relied on as having this effect, were plainly introduced for a different purpose and bear a different meaning. It is not doubted that the defendants by agreeing to accept in payment the notes of Leggett & Bros., agreed that when the notes were delivered the plaintiffs should no longer be responsible as buyers, even should the notes not be collected. It is to the period of the delivery of the notes that the words “ without recourse” yefer, and they were introduced to show that not only the acceptance of the notes was to *160 discharge the plaintiffs from all responsibility as buyers, but that they were not to be liable upon the notes themselves as endorsers, that- is, were either not to endorse the notes at all, or so endorse them as to be exempt from liability.
¥e come, then, to the general question, whether a party who agrees to accept in payment the notes of--a third person is-bound to receive them, although when the day for 'their acceptance arrives, from the declared insolvency of the maker, they are known to be worthless ? Is- the risk of suck an insolvency, occurring between the date of his .agreement and the tender of the notes, cast upon him ? Is this the necessary, or reasonable, interpretation of his agreement?
We- should have no difficulty in answering these questions upon principle, but the necessity of such an answer is superseded by a series of decisions which we regard as settling - the law in favor of the.defendants.
The earliest case is that of Roget v. Merritt & Clapp, (2 Caines. 119,) which in all its material circumstances is not distinguishable from the present.' The action was brought to recover damages for the non-delivery of 220 barrels of’flour, which the defendants, through the intervention of a broker, had sold to the plaintiff; .the sale, by the terms of the sale-note, was for the note of one Lyons, endorsed by one Palmer, plainly meaning that the note described was to be received in payment. There was no delivery of the flour or note when the contract was signed; but the defendants on the following day informed. the broker that they were ready on their part to complete the sale. After the lapse of some days, the broker acting for the plaintiff demanded from the defendants the delivery of the flour, and tendered to them the note which they had agreed to accept. They refused to accept the note, and make the delivery, on the ground, that in the interval Lyons, the maker of the note, had failed and was insolvent. It was insisted by the counsel for the plaintiff that the sale was completed when the sale-note was given, and that the right of property in the flour then vested in the plaintiff, and that of the note in the defendants, who, as owners, must sustain any loss resulting from the insolvency of the maker. The court, however, held that the contract was executory, and that the insolvency of Lyons created a failure of the consideration upon *161 wbicb tbe promise of tbe defendants was founded, which discharged them from its performance; and in delivering tbe judgment of tbe court, Spencer, J., laid it down as a general rule, sustained alike by reason and by authority, “ that when upon a sale of goods there is an agreement to accept notes in payment, if before the delivery of the goods purchased the notes turn out not to be good, a tender of them will not be considered as a payment.” We have stated that this case is scarcely distinguishable from the present, but in reality it was much stronger, for as the sale was not conditional, but absolute, there was much plausibility in the argument that it operated as an immediate transfer of the property.
It might, however, be inferred from the marginal note of the reporter that the decision of the court proceeded mainly on the ground that there was no positive evidence that the defendants had agreed to take the notes of Lyons in payment; but in looking into the case itself it is manifest that such was the nature and legal effect of the agreement which the sale-note contained, and that no other construction could reasonably be given to it. We are satisfied that the judgment of the court was not founded upon any such distinction, and it is certain that none such is to be found in the cases which are next to be cited.
The first of these is Marble v. Hatfield, (2 John. R. 454.) The plaintiff had sold to the defendant a number of cattle, and had received in part payment a bank note which proved to be forged, and the action was brought on the original contract to recover the sum represented by the note as a portion of the price that remained unpaid. The court held that the plaintiff was entitled to recover, and in delivering his opinion, Savage, Ch. J., cites with marked approbation the decision in Roget v. Merritt, as furnishing a rule applicable to the case under consideration, and which the court held itself bound to follow. As the note in this case was forged, we do not lay much stress upon the decision as a direct authority, since it must be admitted that in no case can the delivery of a forged note operate as a payment; but no such circumstance is to be found in the case next to be cited, and which, it will be seen, was decided upon a principle that renders it not merely an applicable, but controlling authority.
We refer to the decision of the Court of Errors, in Lightbody *162 v. The Ontario Bank, (18 Wend. 101, S. C. 11 Wend. 9,) which, as a decision of the court of last resort, may be truly said to have established the law, which it declares.
The plaintiff had received from the Ontario Bank, in payment of a check, a note for $500 of the Franklin Bank of this city, which, it was afterwards discovered; both parties being at the time ignorant of the fact, had failed', and been closed by an injunction, on the very morning of the day on which the check was paid. The question was by which of the parties the loss of the note should be borne. The counsel for the defendant distinctly admitted,both in the court below and in the Court of Errors, that had the note been that of an individual, who was insolvent when it was transferred,, the plaintiff would have been entitled to recover, and they rested their whole- argument upon the distinction, which they asserted to exist, between the notes of private persons and those of an incorporated bank. The latter, they contended, as forming a part of the circulating medium of the country, bear, in all respects, the character and attributes of money, and they insisted, and relied on authorities to show, that it was settled law that money, whether coined or paper, is taken, in all cases, at the risk of the party to whom it is paid. The Supreme Court, however, overruled the- distinction, and rendered judgment for the plaintiff, and their judgment was unanimously affirmed in the Court of Errors.
The leading opinion in the Court of Errors was delivered by Chancellor Walworth, and in the course of it he stated, that it was a maxim of the law applicable to all similar cases, that the loss-must be borne by the party who was the owner of the notes or paper received, at the time the loss happened, if both parties were ignorant of the fact when they made their contract. (13 Wend. p. 105.) And this maxim, it is manifest, embraces all the material facts in the case before us. Here both the parties believed the firm of -Leggett & Brothers to be solvent when they made their contract, and the defendants agreed to accept the notes of the firm in payment. The plaintiffs, we have shown, remained the owners of these notes, when from the declared insolvency of Leggett & Brothers they lost their value. The consequence is inevitable, if the maxim laid down by the Chancellor be law, that *163 tbe plaintiffs alone must bear tbe loss wbicb tbe failure of tbe makers of tbe notes occasioned.
There are one or two further observations which this decision of tbe Supreme Court and of tbe Court of Errors, in Lightbody v. The Ontario Bank, forcibly suggests.
Tbe decision is a complete answer to tbe objection founded on tbe marginal note of tbe reporter, that may possibly be made to tbe authority of that in Roget v. Merritt, since tbe reception of a bank note is in all cases an absolute payment, and tbe person by whom it is received, if tbe bank is then solvent, takes upon himself tbe sole risk of its collection.
Tbe note, the amount of wbicb tbe plaintiff was held entitled to recover from tbe Ontario Bank, bad been accepted by him, and tbe decision therefore goes beyond that in Roget v. Merritt, and beyond tbe case before us. It proves that if tbe defendants bad delivered tbe powders which they agreed to sell, and bad accepted in payment tbe notes of Leggett & Brothers, both parties being then ignorant of tbe insolvency of tbe makers, they would have been justified in returning tbe notes, and would have been entitled in an action against tbe plaintiffs, to recover tbe market value of the powders, when delivered. A fortiori, were they justified in refusing to deliver them.
It is undisputed and familiar law, that where tbe sellers of goods agree to accept in payment tbe notes of tbe buyer, payable on a future day, if before tbe delivery of tbe goods is completed, tbe buyer becomes insolvent, tbe seller may stop tbe delivery and rescind tbe contract. It is an implied condition in every such contract, that tbe maker of tbe notes shall continue to be solvent when the time, for their acceptance arrives, and we think that the law ought now to be considered as settled, that tbe same condition is to be implied, when by tbe terms of the contract the notes to be accepted, and accepted as an absolute payment, are tbe notes of a third person and not of tbe buyer.
Tbe complaint was, therefore, properly dismissed, and tbe judgment thereon must be affirmed, with costs.