HUNT vs. COMSTOCK.

Where the owner of land agrees that his creditor may occupy a dwelling house belonging to him, for the term of one year, and until he pays a mortgage which the creditor holds against him, the relation of *landlord* and *tenant* exists between the parties, and on payment of the money, after the first year, and refusal of the creditor to yield up the possession, the owner may institute proceedings against the creditor under the statute authorizing *summary proceedings* to obtain possession of land.

It is in such case at the election of the owner to put an end to the term at any time after the first year, by paying the mortgage, although the money is not due, according to the terms of the mortgage, under four years.

LANDLORD and tenant. *Comstock* commenced proceedings against *Hunt*, under the statute allowing *summary proceedings*, to recover the possession of land, 2 *R. S.* 512, §28, alleging, that Hunt was his *tenant* of certain premises, and *held over* after the expiration of his term. The case was tried by a jury, who found a verdict in favor of the landlord, and the judge before whom the proceedings were had issued a warrant for the removal of Hunt from the premises. Hunt sued out a *certiorari*, from the return to which the following facts appear : on

ALBANY,
Oct. 1836.

Hunt
v.
Comstock.

the 11th October, 1831, an instrument in writing was entered into by Comstock, whereby he agreed to let Hunt have the use of the house that he lived in on the farm that Comstock had bought of him ; also a garden, and the privilege of fire-wood, and certain other privileges, *for the term of one year*, and *until Comstock should pay him the money on a certain mortgage* that he held against him. On the 5th February, 1833, Comstock made an affidavit, setting forth the above agreement, and stating that on the 19th November 1832, he had *tendered* to Hunt $1360,50, being the whole amount of the principal and interest due upon the mortgage referred to in the agreement, and demanded possession of the house, &c. which Hunt refused to surrender; that on the 5th January, 1833, notice to remove was served upon Hunt, but that he had not removed, and remained in possession, holding over. Upon which he applied to a judge of the county courts of Onondaga, for a summons, requiring Hunt to remove, or shew cause why possession should not be delivered to the applicant. On the day appointed, Hunt appeared, and objected to the sufficiency of the affidavit made by the applicant, upon the following grounds : 1. That the *terms* upon which the premises were rented, and the *rent* were not stated ; 2. That it does not appear by the affidavit whether the money secured by the mortgage was or was not *due* when the tender of payment was made ; and 3. That a case is not made out by the affidavit, shewing the applicant to be entitled to the remedy sought by him, or giving the judge jurisdiction in the matter ; which several objections were overruled by the judge. Hunt then made an affidavit denying the facts upon which the summons was issued, and the case was subsequently tried by a jury. On that trial Hunt produced the mortgage referred to by Comstock, bearing date 11th October, 1831, conditioned for the payment of $2000, in manner following : $200 on 1st February, after date of mortgage, and the residue in 4 annual instalments.

*B. Davis Noxon*, for plaintiff in error.

*J. R. Lawrence*, for defendant in error.

*By the Court,* NELSON, C. J. Most of the objections taken to the proceedings before the judge under the statute depend upon the true construction of the contract of 11th Oct. 1831. If it does not amount to a lease, then the judge had no jurisdiction in the matter, and the whole proceedings are void. Comstock had bought of Hunt his farm, and the agreement in question was entered into to enable the latter to remain in possession of the dwelling-house, together with the use of some privileges appurtenant, for the fixed period of one year, " and (using the words of the agreement) until said Comstock shall pay him the money on a certain mortgage that he holds against him." The term " let" is employed, which may, and when used in the connexion here found, ordinarily does denote a leasing of the premises ; and were it not for the fact that the farm had been previously bought of Hunt, no doubt could be raised about the effect of it. It would fairly have imported a letting of the premises, in connexion with the other parts of the agreement. From the recital that it had been previously bought of *Hunt,* it is contended that the dwelling-house and privileges, instead of being rented, as the terms import, were reserved in the contract of purchase, and of consequence that the relation of landlord and tenant did not exist. But if we are to construe the instrument, and give effect to it agreeably to the language employed to express the meaning of the parties, disregarding extrinsic facts, (and the counsel for the plaintiff in error contends for this rule in reference to another point in the case, and no doubt properly,) then we can know nothing of the terms or conditions of the sale of the farm out of the instrument ; and clearly nothing is to be found within .it respecting them. The case stands simply on the footing that *Comstock* owned the farm, and let *Hunt* have the use of the house, &c. for the term prescribed. It is true no rent is reserved, but this is not material to constitute the relation of landlord and tenant between the parties. We may from this circumstance conjecture that the arrangement grew out of the purchase, but it would be only conjecture; it affords no legitimate inference of the fact.

If then this is a lease, the next question is, when did it terminate ? because the proceedings have been instituted on the

ground that the term is at an end. The affidavit states that the amount due upon the mortgage, $1360,50, by which I understand the whole amount of the mortgage, was tendered to *Hunt* on the 19th Nov. 1832, and refused, and that the term then expired. This question, like the first, also depends upon a construction of the instrument, the substance of which is contained in the affidavit. By it *Hunt* was to have the house, &c. one year absolutely, and until the payment of the money on a certain mortgage which he held. Now it is said the whole of the money did not become due on the mortgage for some four years, and that the payment meant a payment according to its terms. This we think is not the fair import of the language used. The parties were not attempting to provide for the payment of the mortgage debt according to its terms, but to limit the occupation of the dwelling-house. The *security* of the payment of the money was involved in the occupation, and in fixing the surrender of possession that was provided for. Hunt has agreed that his occupation shall end on the payment of the money on his mortgage, not the payment when the money shall become due and payable according to the terms of the mortgage. Upon the construction contended for by the counsel for the plaintiff in error, the lease is an absolute one for four years, or to the time when the last payment falls due. So it would have been drawn, instead of a lease for one year and till the payment of the money, if such had been the intent of the parties. The power to terminate the use of the dwelling-house after the year is given to Comstock unqualifiedly. He might do a certain act, to wit, pay the mortgage, and that implies that Hunt must receive the money, and then there is an end of the term. This is the good sense and fair import of the language.

The instrument being a lease of the dwelling-house, and the termination of it shown, the judge had jurisdiction of the case, under the 2 *R. S.* 511, 513, §28, *sub.* 1, which authorized him to entertain the proceedings where it appeared to him that the tenant held over and continued in possession of the demised premises, or any part thereof, after the expiration of the term, without the permission of the landlord. An exception was taken to the sufficiency of the affidavit; but it

will be seen, on comparing it with the requirements of the statute, that it is unobjectionable.

We shall not look into the facts of the case to see whether it was rightly disposed of on the merits ; we have nothing to do with that question on this certiorari.

ALBANY,
Oct. 1836.

Proceedings confirmed.