The cause was brought on to argument in the supreme court, and after advisement judgment was rendered affirming the proceedings before the justice. The following opinion was delivered :
“ By the Court,
Nelson, C. J.
The affidavit of the landlord sets forth a demise to the tenant of a house and premises, in the first ward of the city of New-York, numbered 43, in William-street, to commence 1st May then next, (1833,) and continue for one year, at $1500 rent, with a condition that if he should determine to build upon the lot, the demise was to [ *284 ] cease at the end of the year 1833 ; that the tenant entered *by virtue of the demise and refused to leave the premises at the end of the year 1833, notwithstanding the landlord had determined to build, and had given due notice of the fact.
The affidavit of the tenant states that he is tenant in possession of the house and premises known as No. 43 in William-street, by virtue of a demise from the landlord, for a term not yet expired, and denies that the said demise was subject to any condition that if the landlord should determine to build on said premises, it was to terminate at the end of the year 1833. If the demise here refers to the one set forth by the plaintiff, as it should, then the parol lease for the year is admitted, and the only fact in litigation is, whether the condition was annexed to it. If it was, the notice of the determination to build being sufficient, the term ended with the year 1833.
The fact thus controverted was a question for the court and jury below. We have nothing to do with that question here on the record, and shall not inquire whether it was rightfully or erroneously determined. It has been repeatedly decided by this court, that this common law certiorari brings up only the record of the proceedings below, and so much of the facts as may be material to show the jurisdiction, and to present questions of law determined in the course of the proceedings, and which may properly constitute a part of the record. This is the utmost latitude indulged in the review, 6 Wend. 564; 2 Caines 179; 20 Johns. R. 430 ; 5 Wend. 98; 10 id. 420; and is an extension itself, perhaps,, of the strict common law rule of practice.
*217 Besides, we are inclined to believe that the affidavit of the tenant is defective, and does not put' in issue the demise set forth by the landlord, or any material part of it. It carefully avoids any reference to that demise, except by construction and inference, and it may very well be that the tenant intended by the language used, to refer to the written demise, the year before, which he gave in evidence, and what would have been proper proof of the contract of lease for the succeeding year from the acquiescence of both parties, if no new one had been entered into. The tenant should have left no doubt upon this point. The act requires that he should deny *the facts upon which the said summons was issued, [ *285 ] or any (some) of those facts; and the matters thus controverted shall be tried by a jury. The denial should be express and positive and not circumstantial and argumentative, as it is upon the last view. Ho possibility of evasion should exist.
The defendant was not a tenant at will under a demise, which is alleged by the plaintiff in his affidavit, but for “ part of a year” provided for by the statute, 2 R. S. 512 § 28 and therefore a month’s notice was not nec. essary, 1 R. S. 745, § 9. It was a lease for a year with the privilege to the landlord to determine it at the expiration of eight months. This is nothing like a tenancy at will. It is for a specified term of time in either aspect.
Judgment before the marine justice affirmed.”
The tenant thereupon sued out a writ of error, removing the record into this court, where the following points were presented by the counsel for the respective parties:
J. L. Wendell, for the plaintiff in error, submitted the following points:
I. In all cases where a new jurisdiction is created by act of the legislature which does not proceed according to the course of the common law, so that a party affected by its decision cannot tender a bill of exceptions, and have a remedy for any errors which may intervene, by writ of error, the party injured is entitled to a certiorari, to which the inferior tribunal is bound to return the evidence in the case, so that the supreme court may see that there was at least some evidence to warrant the judgment rendered by the inferior tribunal. Case of Cardiffe Bridge, 1 Salk, 146 ; Cross v. Smith, 1 Salk. 148 ; 3 Id. 79, S. C.; 12 Mod. 643, S. C. ; Groenvelt v. Burwell and others, 1 Ld. Raym. 454; Lawton v. Comm’rs of Higways of Cambridge, 2 Caines, 179; Wildy v. Washburn, 16 Johns. R. 50; Lynde v. Noble, 20 Johns. R. 82 ; Le Roy v. Mayor of N. Y. 20 Johns. R. 430 ; Roach v. Cozine, 9 Wendell, 227 ; Rowan v. Lytle, 11 Id. 616; Brown v. Betts, 13 Id. 29;Mayor, &c. of N. Y. v. Lord, 17 Id. 285; and same case in court of errors, 18 Id. 126 ; Arthur v. Comm’rs of Sewers in Yorkshire, 8 Mod. 331; Fortescue’s R. 374, S. C.
*218 * II. A verdict and judgment under the act authorizing summary proceedings for the recovery of land, is like a conviction in England before a justice of the peace, where he is authorized to impose penalties and forfeitures in a summary way. In such cases a certiorari lies, and the justice is bound to set up a record of the conviction, and the evidence in the cause, so that the court may see that justice has been done. So here, the officer is bound to make a return of his proceedings, and to send up the evidence in the cause. Rex v. Lloyd, 2 Strange, 996; Rex v. Killett, 4 Burr. 2063; Rex v. Read, Douglass, 485 ; Rex v. Salomons, 1 T. R. 251; Rex v. Sheed, 2 Barnardiston, 16, 73; Rex v. Bryan, Andrews R. 81 Peat’s case, 6 Mod. 228; Rex v. Thompson, 2 T. R. 18 ; Rex v. Lovett, 7 T. R. 153; Rex v. Clarke, 8 T. R. 222; Rex v. Bass, 5 T. R. 251. Burns’ Justice, tit. Conviction, pp. 410, 417.
HI. It was the uniform practice of the supreme court, previous to the passage of the act requiring justices of the peace to make a special return as to the facts stated in the affidavit upon which the certiorari was allowed, to require justices of the peace by rule, to make return as to the facts of cases tried before them, to enable the court to determine whether the judgment was warranted by the testimony in the cause. The first statute requiring a return of the facts, was passed 11th April, 1808. Laws of N. Y. Greenleaf’s ed. 458, act of 1792 ; 1 Id. Webster’s ed. 501, § 19, act of 1801; 5 Id. Webster & Skin. 383-4, act of 1808 ; 1 R. L. 1813, pp. 396-7, § 17 and 20 ; 2 R. S. 255, § 170 ; Durkee v. Brackett, 1 Caines, 501; Delamater v. Borland, 1 Id. 593 ; Felter v. Mulliner, 2 Id. 384 ; Leonard v. Sunderlin, 3 Id. 136 ; Ehle v. Smith, 3 Id. 187; Fisher v. Chandler, 1 Johns. R. 504 ; Nicoll v. Dunlap, 2 Id. 195 ; Dodge v. Coddington, 3 Id. 146; Kidder v. Townsend, 3 Id. 435; Wilton v. Fenner, 3 Id. 439 ; Stryker v. Bergen, (a summary of the law upon this question,j 15 Wendell, 490; Noyes v. Hewitt, 18 Wendell, 145, (in this court, 'approving of the lazo as laid down in Stryker v. Bergen.j
[ *287 ] IV. *The statute relative to summary proceedings to recover the possession of land, authorizes the supreme court to issue a certiorari to examine any adjudication authorized by that act; consequent ly, by the statute, independent of the common law, the court have a right to look into an adjudication of fact, as well as into an adjudication of law. 2 R. S. 516, § 47 ; and 2 R. S. 512, § 26, giving an appeal in certain cases.
V. The special tribunals authorized by law to pass upon the rights of the citizen, by a course of summary proceedings, are compellable to return so much of their proceedings, and of the evidence adduced before them, as to show that at least there was some evidence to authorize the judgment pronounced. This must bp so, or the citizen is exposed to the grossest injustice, *219 without the hope of relief, as will be seen by reference to the cases of Pugsley v. Anderson, 3 Wendell, 468; Pearsall v. Comm'rs of North Hempstead, — Wendell, 14; Birdsall v. Phillips, 17 Id. 468.
0. O' Connor, for the defendants in error submitted the following points :
1. The statute under which the proceedings below were had, renders the affidavit of the landlord conclusive as to all facts therein alleged, which are not controverted on oath by the tenant, and submits to the decision of the jury nothing but the fact or facts thus controverted. 2 R. S. 513, § 29 ; 2 R. S. 514, § 34 ; Evertson v. Sutton, 5 Wendell, 248; Roach v. Cosine, 9 Wendell, 228 ; Du Bouchet v. Warton, 12 Conn. R. 539 ; Oakley v. Schoonmaker, 15 Wendell, 226 ; Gould v. Ray, 13 Wendell, 637 ; Rockfeller v. Donelly, 8 Cowen, 643, 653.
II. The affidavit of the tenant in this case cannot be deemed to have put in issue any fact except the existence of the condition abridging the parol demise of 1st April, 1833, in case the landlord should determine to build upon the premises ; and that fact having been regularly submitted to a jury according to the statute, and found for the landlord, the adjudication of the justice was correct. Comyn’s Dig. Pleader. E. 6.
1. *Such conditional limitation was perfectly valid. Doe v. [ *288 ] Hawk, 2 East, 486 : Doe v. Clark, and al. 8 East, 185; Shepard's Touchstone, 138, 273, 125,129, 153 ; 4 Bacon's Abr. Leases and Terms for years, L. 3, 4.
2. The supreme court could not, and this court cannot inquire whether the evidence justified the finding of the jury. 2 R. S. 516, § 47, Laws of 1820, page 176; Groenvelt v. Burwell, 1 Comyn's Rep. 80; Lynde v. Noble, 20 J. R. 83; Revisers' note, 3d R. S. (2nd Ed.) 766 ; 2 R. S. 515, § 39; 2 R. L. of 1813, p. 396, § 143; 1 R. L. of 1813, p. 396, § 17, 20 ; 2 R. S. 256, § 171, 177, 181; Striker v. Bergen, 15 Wendell, 492; Noyes v. Hewitt, 19 Wendell, 145; Drown v. Stimpson, 2 Mass. R. 445; Bird v. Dansdale's lessee, 2 Binney's R. 89, 90, 91; 2 R. S. 208, § 1, Subd. 2; Revisers note, 3 R. S. (2nd Ed.) p. 678; Sabin v. Foot, 19 Johns. R. 159 ; People v. Chenango, 1 Johns. Cases, 179; Judges of Oneida v. People, 18 Wendell, 106; Life and Fire Co. v. Adams, 9 Peters, 602; Cummins v. Massam, March. 196 ; 1 Siderfin, 296 ; King v. Inhabitants, 5 Modern, 149, 2 Salk, 492; King v. Oulton, Ca. Temp. Hardwicke, 169 ; King v. Loveden, 8 T. R. 616 ; Viner Ab. Certiorari, M. 10; Lawton v. Commissioners, 2 Caines, 183 ; Van Patten v. Ouderkirk, 2 Johns. Cases, 108; Starr v. Trustees of Rochester, 6 Wendell, 566; Comstock v. Porter, 5 Wendell, 98; Allen v. Horton, 7 Johns, R. 23; Reed, Lessee v. Marsh, 13 Peters, 153.
*220 III. If the merits of the finding by the jury are inquirable into here, then the defendants in error contend, that such finding was correct.
1. The tenant’s affidavit correctly understood, denies none of the facts detailed by the landlord, and is a mere evasion.
2. From the phraseology of the tenant’s affidavit, and his giving in evidence the lease of May, 1832, the jury had a right to infer that he relied upon that as an existing lease, and that his denial of the “ said demise" being subject to “ any stipulation or condition,” referred to the lease of 1832.
3. The lease to Niblo and Doran was terminated by its own [ *289 ] limitation, on the 1st of May, 1833. The omission to *give security for the rent, or to claim the extension for four years, on or before February 1st, 1833, and the acceptance by Niblo of a new parol lease, for one year from 1st of May, 1833, are circumstances which conclusively repel any pretence that the tenant held under the covenant of re„ newal at the time the proceedings were instituted before the justice. Featherstonhaugh v. Bradshaw, 1 Wendell, 135 ; Mc Gaunten v. Wilbur, 1 Cow. 257; Shepard's Touchstone, 273, note 1; Bishop of Bath's case, 6 Coke, 35.
4. The statute under which these proceedings were had, allowing the par. ties to testify in the first instance, and the meaning of the tenant’s affidavit being doubtful at best, it was proper to call upon the tenant to testify on the hearing, and the jury were warranted in drawing an unfavorable inference from his refusal.
5t. The line of defence adopted by the tenant, and the evidence given on the trial, leave no doubt as to the fact that the hiring of April 1, 1833, was subject to the condition alleged.
The counsel for the plaintiff in error, in opening the argument on his part observed, that although with all respect, it would be urged, that neither of the positions laid down in the opinion delivered in the supreme court can be sustained, the principal question intended to be presented to the court, and to test the correctness of which this writ of error was brought, was that arising upon the ground assumed by the court, that “ they had nothing to do with the questions of the condition annexed to the lease and would not inquire whether it was rightfully or erroneously decided,” although the existence of that condition was the only ground upon which the complaint of the landlord was founded.
When this court come to consider the almost numberless subordinate tribunals, to which are entrusted by our laws the exercise of judicial powers, affecting the interests of the citizen in matters of the utmost consequence and proceeding in modes unknown to the common law, the importance of the question now presented will be readily perceived. All these tribunals were *221 created, and powers conferred, in the faith that they were all subject to the supervision of the highest *tribunal of the state; [ *290 ] that if they acted in violation of the great principles of law, were chargeable with ignorance or guilty of injustice, by an appeal to the supreme court, the evil could and would be corrected. It is a principle of the common law that to all such tribunals a certiorari lies, but to place it beyond all doubt, it is not unusual for the legislature, on the creation of those special tribunals, expressly to give the writ of certiorari. They have done so in thiscase of landlord and tenant. But of what avail are those provisions of law, if the supreme court refuse to exercise the jurisdiction which appertains to it ? They are of none; and one of two things must come to pass: either the whole policy of our government in distributing those powers to subordinate tribunals, bringing justice to every man’s door,—rendering it cheap and expeditious, must be abolished; or this court must say, that the supreme court have erred in refusing to exercise its legitimate powers. It is an unusual complaint that judges refuse to entertain jurisdiction, and it will be recollected that not long since this court reversed a judgment because the supreme court had exceeded its jurisdiction; Oneida O. P. v. The People, 18 Wendell, 79; noth withstanding which, I greatly deceive myself, if on examination of this case it will not be found that here the court have erred on the other side, and have refused to entertain jurisdiction when it properly belonged to it.
Before proceeding to the question of jurisdiction, the counsel said he would distinctly state the ground upon which the certiorari in this case was sued out. The landhrd claimed possession of certain premises demised to the tenant on the ground, that in a lease for one year, from the first day of May, 1883, he had reserved the right to put an end to the term at the expiration of the year 1833, in case he should determine to build upon the premises ; that he had given notice of such determination, and that notwithstanding the tenant held over. The tenant was summoned before a magistrate, to show cause why he should not yield up the premises, and he appeared and made affidavit, expressly and unequivocally denying that the demise was subject to any such stipulation. A jury was summoned, and heard the *proofs and allegations of the parties, and found a [ *291 ] verdict in favor of the landlord. The evidence adduced on the hearing was returned to the supreme court, and the tenantj'contends that it wholly fails to establish the allegations of the landlord, and that consequent, ly the verdict is without evidence. On the part of the plaintiff in error it is contended that no evidence whatever was given of the existence of the condition or stipulation : and that the only pretence on that subject, made on the hearing before the jury was, that the affidavit of the landlord, alleging a parol demise in April, 1833, was in that respect uncontradicted by the tenant’s affidavit, and therefore admitted, and upon this criticism upon the affi *222 davit, instead of proof, the jury appear to have founded their verdict. When this total want of evidence was pressed upon the consideration of the supreme court, they said, “ the fact thus controverted was a question for the court and jury below. We have nothing to do with that question here on the record, and shall not inquire whether it toas rightfully or erroneously determined.” In this it is respectfully insisted the supreme court erred.
The supreme court also intimate that the affidavit of the tenant was defective in not putting in issue the demise set forth by the landlord. The answer to which is, that the landlord and the magistrate did consider it as a full denial, and a jury were summoned and tried the issue. If defective the landlord should have demurred to it when put in, so that the tenant might have amended it. After a plea is treated as a good plea, and a trial had upon it, it is too late to interpose a demurrer. Besides, it is submitted that the affidavit is a full and perfect answer.
The counsel said he would now proceed to the discussion of the main questions in the case, and he accordingly laid down the following proposition :
1. In all cases when a new jurisdiction is erected by act of the legislature, which does not proceed according to the course of the common law, so that a party affected by its decision cannot tender a bill of exceptions, and have a remedy for any errors which may intervene, by writ of error, the party injured is entitled to a certiorari, to which the inferior tribunal is [ *292 ] *bound to return the evidence in the case so that the supreme court may see that there was at least some evidence to warrant the judgment rendered by the inferior court.
The power of th.e supreme court, in its supervision of inferior tribunals created by statute, is not limited to inquiries as to whether such tribunals have exceeded their jurisdiction ; whether they have proceeded regularly according to the requirements of the statute creating them ; and whether questions of law decided by them were or were not correctly decided.
It is admitted that this proposition is at war with a doctrine lately sprung' up in the supreme court of this state, which has been gradually extending, until at length the principle is boldly advanced, that let the errors of those inferior tribunals be what they may, whether they err on questions of law or queitions of fact, the party affected by them is remediless, and, in the language of the court, it is the misfortune of the party against whom the mistake was made. This doctrine it is intended to controvert; and it is hoped to have the error of the supreme court, as most respectfully it is contented to be, corrected by this court.
Independent of all adjudications upon the subject, it is submitted that the proposition contained in the above point must commend itself to the approval of every man of common sense. That the decisions of all our courts of record, up to the supreme court of this state and the high court of chancery, *223 should be subject to review and to reversal when found wrong, and that the errors of the numerous inferior tribunals established by our laws cannot be corrected by a superior court; that whilst every other court may be restrained, and kept within the bounds of the universal common law of the land, those inferior tribunals may trample down all law and all justice, without the .power of correction resting somewhere, is a proposition founded in mistake, and will never receive the sanction of this court.
Those inferior jurisdictions are wisely created. They bring justice home to every man’s door; they dispense with the tardy and expensive process of our courts of record; they *do justice speedily; [ *293 ] but if the rights of the citizen could be disposed of by them contrary to law, and without evidence and against evidence, and their doings could not be reviewed, every special tribunal thus erected would be a nuisance to individuals, and a blot upon the character of the state.
But it is not so ; these inferior tribunals may not only be kept within the bounds of their jurisdiction, and compelled to conform strictly to the requirements of the law creating them; but the supreme court have the right to look into all their proceedings, and it is their duty to see that justice has been done.
I will now proceed to submit to the court the adjudications upon this subject, and show that from the earliest history of the law down to a decision made by the supreme court of this state, in May, 1837, 17 Wend. 464, the proposition for which I contend has been fully sustained, with the exception of a few intervening cases, in which the doctrine of the supreme court, that their power extended only to questions of jurisdiction and regularity, was first broached and subsequently repeated.
And first, I submit that in England it is a settled rule that whenever any new jurisdiction is erected, be it by private or public act of parliament, it is subject to the inspection of the K. B. by writ of error, or by certiorari, or mandamus; ease of Cardiffe Bridge, 1 Salk. 146; 1 Ld. Raym. 580, S. C. ; and every such jurisdiction here, is subject to the supervision of the supreme court.
In Cross v. Smith, 1 Salk. 148, 3 Id. 79, S. C., after deciding that a certiorari lies to a particular person having cognizance to hold pleas, or to a county palatine, the court proceeds thus: “Besides, as the statute, 27 Henry VIII., says, there is as much difference between the king’s ministry of justice in his superior court and his inferior courts, as between being governed by the king in person and by his deputy ; therefore it is that THIS COURT HATH A SUPERINTENDENCY, AND TO PREVENT OPPRESSION MAY AWARD A CERTIORARI TO ANY INFERIOR COURT ; and the subject’s right to writs of certiorari appears by the 43 Eliz. ch. 5, and 21 Jac. I. ch. 23, which restrains the *dbuse of them." We had a similar [ *294 ] *224 statute, which is not re-enacted. 1 R. L. 140. In the same case of Cross v. Smith, reported in 12 Mod. 643, Holt, C. J., says: “ Admit the charter to be, to hold plea of all matters arising within that precinct, can any man think that by this all the king’s subjects should lose the benefit of the king’s courts, which are part oe the constitution oe THE GOVERNMENT, and PART OE EVERT MAN’S BIRTHRIGHT to Sue and be sued in.”
In Groenvelt v. Burwell and others, 1 Ld. Raym. 454, which was an action for false imprisonment, the defendant justified under a warrant issued by the censors of the college of physicians against the defendant, on conviction for malpractice as a physician. The plaintiff replied, traversing the mal-practice. Defendant demurred. Plaintiff insisted that his replication should be sustained, as he had no remedy by writ of error or otherwise. Holt, C. J., admitted" that the plaintiff had no remedy by writ of error, because it was a court newly instituted, empowered to proceed by methods unknown to the common law. He however compared the adjudication of the censors to convictions before justices of the peace out of the sessions, upon which, though error does not lie, yet a certiorari lies,for it is a consequence of all inf erior jurisdictions to have their proceedings returned into the Icing’s bench to be examined there. Again, he says, where any court is erected by statute a certiorari lies to it. So if they perform not their duty, the king’s bench will grant a mandamus.
In Arthur v. The Commissioners of Sewers in Yorkshire, 8 Mod. 331, the plaintiff was chosen clerk of the commissioners, and afterwards turned out. He asked for a certiorari. One of the judges doubted whether the writ lay, but added—“ It is true where a man is chosen into an office or place, by virtue whereof he has a temporal right, and is deprived thereof by an inf erior jurisdiction, who proceed in a summary way, in such case he is entitled to a certiorari, ex debito justitice, because he has no other remedy, being bound by the judgmentof the inferior jurisdiction and the [ *295 ] certiorari was accordingly allowed. The same case is ^reported in Fortescue’s R. 374, where it is said the court granted the writ to see the title.
Lawton v. Commissioners of Highways of Cambridge, 2 Caines, 179, was the first case in this state on this subject. It was a certiorari to three judges of the. common pleas of Washington county, to remove a¡ decision made by them on 'an appeal from the laying out of a road. They made a return, and on the argument it was insisted that a certiorari did not lie. The opinion of the court was delivered by Chief Justice'/S^erncer. He said: “ It is a position beyond contradiction that the supreme court may award a certiorari not only to inferior courts, but to persons invested by the legislature with power to decide on the property or rights of the citizen, even in *225 cases where by statute they are authorized finally to hear and determine.” Again : “ The necessity of a superintending power to restrain and correct partialities and irregularities which may be committed by inferior officers, is so obvious and indispensable that the court ought by no means to deny themselves a jurisdiction of such salutary influence." The ch. justice excepted cases of public inconvenience, as the poor rate, land tax, &c., and cases of mere discretion.
In Wildy v. Washburn, 16 Johns. R. 50, a question arose between two constables, each of whom was appointed by justices. The court say, whenever the rights of an individual are infringed by the acts of persons clothed with authority to act, and 'who exercise that authority illegally, and to the injury of an individual, the party injured may have redress by certiorari.
In a question arising under the same statute under which the proceedings in this case were had, as it existed in 1820, the court say, in Lynde v. Noble, 20 Johns. R. 82, “ It is admitted that this court possess by the common law, authority to award a certiorari, not only to inferior courts, but to persons invested by the legislature with power to decide on the property or rights of the citizen, even in cases where they are authorized by statute finally to hear and determine ; and this power can only be taken away by express words. The necessity of a superintending power to *revise the proceedings and correct the irregularities committed [ *296 ] by inferior officers cannot be questioned. This is its (the certiorari’s) legitimate office ; it does not before trial withdraw the question to be tried, from the inferior jurisdiction, but may subsequently cause it to be reviewed.
In the case of Le Roy v. Mayor &c. of New-York, 20 Johns. R. 430, where an assessment was made for creating a sewer in Canal-street, it was objected by the. plaintiff in error, the party suing out the certiorari, that the assessment was not extended to all the owners of lots benefited, and that therefore the assessment was unjust. The attorney for the corporation moved to quash the certiorari, as improvidently issued, which was denied. The plaintiff subsequently applied for an additional return, on which occasion the court said, page 434, <£ It is indispensably necessary to enable this court to determine or settle a principle upon which an assessment of the expense ought to be made, that we should have before us the whole of the proceedings." Again: “ We decided, and without hesitation, that this court has a superintending and supervising power in cases of this description ; and that the papers then submitted to us entitled the plaintiffs to a certiorari, and to such a return thereto as would bring the merits of the question fairly before the court.” Again: “ We supposed then, as we still do, that it is a case of which we have undoubted jurisdiction,” p. 435. The case was then argued, and the above principles fully recognized, p. 438 and 439, and the *226 assessment set aside on the merits. In this case, every possible objection to the jurisdiction was taken and over-ruled.
In Roach v. Cozine, 9 Wendell, 227, the proceedings were duly commenced, under the landlord and tenant act, by Cozine, alleging, that Roach was his tenant, and held over. Roach denied the tenancy, and the case was tried by a jury, who found for Cozine. Roach sued out a certiorari, and the evidence in the ease was returned, and the court passed upon it. The supreme court, by Savage, C. J., say, that the instrument under which Roach claimed was a mortgage, and that the jury either held otherwise, or that their verdict is totally unsupported by evidence; so that either [ *297 ] *way the verdict was wrong. The proceedings were reversed.
In Rowan v. Lytle, 11 Wendell, 616, the proceedings were also under the same act, and on certiorari the evidence was returned. The - supreme court, Savage, C. J., delivering the opinion, reversed the judgment rendered in favor of the landlord, on the ground that the evidence showed that he had no title. In Brown v. Betts, 13 Wendell, 29, similar proceedings were had under the' same statute, and a verdict and judgment rendered for the plaintiff. There was a certiorari and a return, setting forth the evidence. The Court, Sutherland, J., considered and passed upon the evidence, and sustained the finding of the jury.
In the case of Brooklyn v. Patchin, 2 Wendell, 377, S. C. in Er. 8 Id. 47, which was a proceeding for the opening of a street, a jury were summoned to appear in the court of common pleas, to assess the damages of Patchin. After the jury were summoned, Patchin applied for an adjourn> ment for the want of witnesses, which was refused by the court. He sued1 out a certiorari, assigning various errors, and the supreme court set aside the proceedings on two grounds, viz : 1. That an adjournment should have been granted, and 2. That the jury who had a view of the premises ought to have been attended by the sheriff. The corporation of Brooklyn sued out a writ of error, and this court affirmed the decision of the supreme court. There were two opinions delivered for affirmance, one by the chancellor, and the other by Senator Sherman. The chancellor was for affirmance, upon the following grounds: 1. That the proceedings were erroneous, because the'consent of the owner of the land had not been obtained; and 2. That the court erred in refusing an adjournment. He holds, that where palpable injustice has been done by an inferior jurisdiction, in the exercise even of a discretionary power, in opposition to the settled principles of law and equity, their proceedings may be corrected, either by certiorari, or by mandamus. Senator Sherman was for affirmance : 1. Because [ *298 ] the challenge to the jurors should *have been received ; 2. that the adjournment ought to have been granted; 3. That the view was irregular.
*227 But it is supposed the question is conclusively settled by this court, in The mayor, &c. of New-York v. Lord, 17 Wendell, 285; 18 Id. 126. This was a case arising under the act authorizing the blowing up of buildings in the city of Hew-York during a fire. There was an assessment of damages in the court of common pleas, under a special power delegated by statute, the court acting not according to the course of the common law, but as commissioners. The assessment was removed into the supreme court by certiorari, and the facts appeared by affidavits of what transpired on the hearing ; there was no record, no bill of exceptions, but a mere review of the facts as thus exhibited, and yet the supreme court not only looked into the facts and the questions of laiv laid down by the judge on the hearing; but this court did the same, notwithstanding it toas expressly objected that the court cannot, on certiorari, review the facts, but only the law of the case.
It will not be denied, notwithstanding the various cases above referred to, in which the supreme court have looked into the evidence returned upon certiorari, and acted upon it, that there are cases in which a contrary doctrine has been held. Thus, in Nichols v. Williams, 8 Cowen, 13 ; Hun v. Comstock, 15 Wendell, 665 ; Birdsall v. Phillips, 17 Id. 464 ; and Prindle v. Anderson, 19 Id. 391, which were all cases of certiorari, under the landlord and tenant act; in Rathbun v. Sawyer, 15 Wendell, 451, which was a certiorari to a court martial, and in Allyn v. The Commissioners of Highways of Schodack, 19 Id. 342, which was a certiorari to a court martial, and in Allyn v. The Commissioners of Highways of Schodack, 19 Id. 342, which was a certiorari to the judges of Rensselaer, acting on an appeal respecting a road, the supreme court hold, that the evidence before the inferior tribunals could not be called for by the' certiorari, and if returned could not properly be looked into by the court; yet in every one of those cases the court do look into the evidence and pronounce upon it, and either approve or condemn the finding of the jury or court. This is a curious fact, and what renders it extremely remarkable is, that the same thing was done by the king’s bench, in England, as *long since as the [ *299 ] year 1643, in the case of Cummins v. Massam, March’s R. 196, In that case a certiorari was issued to commissioners of sewers, to return the facts in relation to the imposition of an assessment for the purpose of determining whether it ought to be paid by the landlord, or by the tenant of certain premises. A doubt was started by one of the judges, whether a certiorari lay to commissioners of sewers: Two of them said it did lay, and one of them assigned the following reason: “ they (the commissioners) are enabled by statute to proceed according to their discretion, and therefore, if they proceed secundum cequum et bonum, we cannot correct them; but if they proceed where they have no jurisdiction, &c. thep they are to *228 be corrected. The court looked into the evidence, and finding that the party complaining (the tenant) had covenanted to pay all assessments, the proceedings were confirmed. These cases shew that 'the courts felt the obligation of looking into the evidence, or why it was done ?
With all due respect it is submitted that the principle that upon certiorari the power of the king’s bench in England, or of the supreme court of this state, is limited to the mere questions of the jurisdiction of the inferior courts, and the regularity of their proceedings is entirely unsupported by authority. The power of the court thus limited, the writ, in most cases, would be a solemn mockery. A principal office of the writ undoubtedly is, to vacate the proceedings of inferior tribunals, where they assume jurisdiction not belonging to them; another is to require regularity in the mode of exercising their authority, but the principal virtue of the writ is, that it brings the doings of those inferior tribunals under the supervision of the highest tribunal of the land, and gives to each citizen, in the language of Holt, C. J., speaking of inferior tribunals and the writ of certiorari, “ the benefit of the king’s (people’s) courts, which are part of the constitution of the government, and part of every man’s birthright to sue and be sued in,” 12 Mod. 643 ; without which the inferior tribunals would be intolerable. It is not denied that the question of jurisdiction has been much discussed in England, on applications for certiorari, but the doubt was not whether the £ *300 ] *power of the king’s bench was limited to inquiring into the jurisdiction of the inferior courts, but whether the Tdng’s bench had jurisdiction in the matter. That was the inquiry in the case of the Cardiffe Bridge, 1 Salk. 146; 1 Lord Raym. 580, S. C.; and in 2 Keble, 82, pl. 80 ; 1 Lord Raym. 584; 8 T. R. 312 ; March, 196; 1 Str. 609 ; 2 Id. 932; 2 T. R. 234; Lofft’s R. 347; Douglass, 554; 2 Burr. 1040; 1 Barn. & Adolph. 382, and indeed in all the cases where the question of jurisdiction is discussed; the king’s bench sometimes denying the writ on the ground of public inconvenience, as in the case of an attempt to remove a poor’s rate, or land tax, or the like ; sometimes on the ground that the statute had allowed an appeal; sometimes that the order was in English and not in Latin, and sometimes, as in the last case, on the ground that the writ of certiorari was expressly taken away by statute. In the case last cited, 1 Barn. $ Adolph. 382, the reporters say the certiorari was refused, because no excess of jurisdiction appeared, but by reference to' the statute under which the conviction was had, which was desired to be removed, it will be seen that the right to a certiorari is expressly taken away. See Statutes of Great-Britain and Ireland, vol. XI. part 2,p. 377.
II. Point. A verdict and judgment under the act authorizing summary proceedings for the recovery of land, is like a conviction in England before a justice of the peace, where he is authorized to impose penalties and for. *229 feitures in a summary way. In such cases a certiorari lies, and the justice is bound to send up a record of the conviction and the evidence in the cause, that the court may see that justice has been done. So here the officer is bound to make a return of his proceedings, and to send up the evidence.
In England, as here, there are many inferior tribunals, whose proceedings are summary, and to whom, and particularly to justices of the peace, powers are granted to enforce the laws enacted for the public good, by the infliction of penalties and the imposition of forfeitures. Over all these tribunals, the K. B. exercises a supervision and control by certiorari; and when such writ issues, the inferior tribunal is required to send up the record of the conviction had before it, *together with the evidence [ *301 ] in the cause, that the IC. B. may see that the was evidence sufficient to warrant the conviction. These convictions being had in a summary mode, are analagous to the judgment and conviction under our landlord and tenant act, and are undeniably as much so as the penalty imposed upon Dr. Groenvelt by a college of physicians, which C. J. Holt likened to convictions before justices of the peace, 1 Ld. Raym. 454. On the subject of which summary convictions the counsel cited the following cases :
Rex v. Lloyd, 2 Str. 996, was a certiorari bringing up an order of the sessions, temoving from office a clerk of the peace for misbehavior ; it was objected that the evidence was not set out in the order ; that it ought to have been set out so that K. B. might see whether there was due proof, and not trust the justices who may have deprived the defendant of his freehold upon less evidence than they ought to have done, or perhaps upon that which is no evidence in point of law. Strange, contra, admitted that in cases of convictions before one or two justices the evidence should be set out; but convictions (he said) are in Latin, and orders in JEnglish; and therefore the rule did not apply to this case, which was an order. Lord Hardwicke, O. J. said—“ It is fully settled that in convictions the evidence must be set out, and if this was to be considered as a conviction it would be bad; but we are all of opinion it is to be considered as an order.” That is, the court held, because the order was not in Latin they would not inquire into the merits of the case.
Rex v. Killett, 4 Burr. 2063, was a conviction of a clergyman before a justice for neglecting to read in church the act to prevent profane cursing and swearing. The conviction stated that the infprmation was duly proved. The court held that the evidence ought to be set out. They go on to remark:
“ It ought to appear to the court from the nature of the evidence specially set forth, that the defendant was guiltyand “ that upon a conviction, it is necessary that the evidence should be set out, that that the court may judge whether the justices have done right.”
Rex v. Douglass, 485 ; this was a conviction, under the mutiny act, for *230 [ *302 ] not quartering officers. It was objected *that the evidence was not set out, and the conviction for that cause was quashed.
Rex v. Salmons, 1 T. R. 251—conviction on the lottery act; selling tickets without license.' Court say “ a conviction must be good in all its parts; the information must be supported by the evidence, and the judgment must be supported by loth.
The King and Theed, Barnardiston, 16-73 ; 2 Str. 919 S. C. a conviction under the candle act, for not giving notice of the number of candles made. Court held (the evidence not being set forthj that the conviction must be quashed.
The King v. Bryan, Andrews' R. 81; a conviction for keeping an alehouse without a license. For the defendant, it was urged that in convictions which are in the nature of judgments, the whole evidence must be shown that this court (the K. B.) may judge of the sufficiency thereof: not so of orders, which are authoritative. Lee O. J. 11 In convictions, the evidence ought always to be set out;” and “ I do not say that all the evidence ought to be shown, but certainly so much ought to be set out as is sufficient to warrant the conviction.” Conviction quashed.
Peat's case, 6 Mod. 228. A conviction under the conventicle act, preaching in churches not belonging to the establishment. The court say “ that the justices of the peace being judges of the matter, if they wrong you, you have your remedy by certiorari or appeal.” By the supreme court, all remedy is refused. There is no appeal, and the court emasculate the certiorari.
Rex v. Thompson, 2 T. R. 18. A conviction for keeping and using a gun to destroy game was sustained, although evidence was not set out; but the decision was placed expressly on the ground of former adjudications under the same act of parliament, which the court admit to be an exception to the general rule.
Rex v. Lovett, 7 T. R. 153. The court advert to the last decision in reference to a conviction under another clause of the same act for keeping a dog to destroy game, in which they say the magistrate may [ *303 ] have been misled by Bex v. *Thompson, and add in strong terms, that they thought it the duty of magistrates in all cases to state the whole of the evidence, and not merely the result of it.
Rex v. Clarke, 8 T. R. 222; conviction for keeping a dog to destroy game. The court expressed their approbation of the manner in which the conviction was drawn up ; the justice having “ set forth all the evidence for and against the defendant.”
Rex v. Bass, 5 T. R. 251.; conviction under excise law. Motion for certiorari. Refused because it did not appear by the evidence given that *231 injustice had been done. Court say the justices “ musí state in the conviction the evidence of those facts which was the foundation of their judgment.'”
In Burns’ Justice, tit. Conviction, pages 410, 417, it is said that the forms of convictions are in some cases prescribed by statute, and in others not; that they are never drawn up in form until occasion calls them forth, as when they are to be recorded in the sessions, or removed into a higher court by certiorari.
In Simpson v. Rhinelanders, 20 Wendell, 105, Mr. Justice Cowen, in delivering the opinion of the court, admits that the decisions of the English courts in relation to convictions under summary proceedings were not much considered in the case of Birdsall v. Phillips, 17 Wendell, 464; and that upon certiorari bringing up such convictions, the evidence must appear on the return, and that the rule upon this subject the court did not mean to question ; but he contends, that as to orders and other adjudications the case is altogether different. In support of which distinction, he cites the case of Rex v. Lloyd, 2 Str. 996; where the question arose merely upon an order 'of sessions ; and because it was in English and not in Latin the court held that the evidence need not be set out.
Summary proceedings to recover the possession of land are like convictions before justices, had in pursuance of special authority delegated by statute, which are always the subject of review by certiorari, unless the power to issue a certiorari is expressly taken away by statute. Here, instead of its being taken away, it is expressly granted. Where the ^conviction is on view, an appeal is given, 2 R. S. 512, § 26. [ *304 ] Where there has been a finding by a jury a certiorari is given, 2 R. S. 516, § 47. And if in the case of conviction for a comparatively trivial injury an appeal is given, and a re-hearing on the evidence secured to the party, a fortiori, ought the evidence to be returned on a certiorari to remove proceedings by which a citizen may be deprived of houses and lands, of which he may have a lease for an indefinite term of years ?
III. It was the uniform practice of the supreme court, previous to the passage of the act requiring justices of the peace to make a special return as to all the facts stated in the affidavit "upon which the certiorari was allowed, to require the justices by rule to make return as to the facts of cases tried before them, to enable the court to determine whether the judgment was warranted by the testimony in the cause.
The statutes upon the subject of certiorari to justices’ courts are the following, from which it will be seen that until 11 th April, 1808, there was no statute requiring a return of the facts ; and yet, long before that time, justices were required by rule to make such return; 1 Laws of N. Y. 452, § 17, Greenleaf’s ed.; 1 Laws of N. Y. 501, § 19, Websters’s ed.; *232 5 Laws of N. Y. 383, passed in 1808, Webster & Skinner's ed.; 1 R. L. 396, § 17 and 20 ; 2 R. S. 255, § 170. The act of 1808 required a copy of the affidavit upon which the certiorari was granted to be served upon the justice ; and that this was the first statute requiring a return as to the facts set forth in the affidavit, See 1 Caines, 501, n.
The counsel here cited and commented upon the following cases, to show the practice of the court in relation to requiring a return of the evidence on certiorari to a justice of the peace.
In Durkee v. Brackett, 1 Caines, 501, decided in February, 1804, a motion was made for a rule or certiorari, requiring a justice to return whether the plaintiff below was not permitted by him to testify in his own cause. It was objected that this was in substance to bring up the facts, and [ *305 ] that the "court had decided that it would not oblige the justice to return the evidence. But per curiam: motion granted.
Delamater v. Borland, 1 Caines, 593, decided in February, 1804. In this case a justice’s judgment was reversed for variance between the evidence and the declaration, and because the judgment exceeded the sum demanded Court say “ both errors are fatal, and there must be a reversal with costs.’’
Schoonmaker v. Trans, 2 Caines, 110, decided August, 1804. Motion to amend a justice’s return by inserting the evidence he overruled in a cause before him. It was objected the motion was too late after assignment of errors. Counsel answered ignorance of certain decisions on this subject, and court say, “ We presume the counsel ignorant of the decisions of May and February terms last past, by which we allowed rules on justices ordering them to return evidence in special cases.” Motion granted.
Feller v. Mulliner, 2 Caines, 384, February, 1805. A justice was ordered to amend his return by stating the evidence offered and rejected by him.
Leonard v. Sunderlin, 3 Caines, 136, August, 1805. An affidavit to found a motion that n justice amend his return in matters of fact must specify them, so that court may judge of their materiality.
Ehle v. Smith 3 Caines, 187, August, 1805. This was an action before a justice for tavern expenses, and because it did hot appear by the return that the plaintiff proved that the defendant came tvithin the exceptions, that is, that the defendant was a traveller or lodger in his house, the judgment was reversed.
Fisher v. Chandler, 1 Johns. R. 504, August, 1806. The court say, “ There was some evidence, though perhaps, not sufficient to support a judgment. We have never gone so far as to say that where there is some evidence taken, however light, that the judgment ought to be reversed,” and they accordingly affirmed the judgment.
Butler v. McIntyre, 2 Johns. R. 182, February, 1807. Motion for an *233 additional return as to the facts appearing on the trial. Motion entertained, but the justice having specifically returned to the facts stated in the affidavits upon *which the certiorari was allowed, the [ *306 ] motion was denied for that cause; but not on the ground that the court would not require a return of facts.
Nicoll v. Dunlap, 2 Johns. R. 195, February, 1807. When it clearly appears from the evidence on both sides that a plaintiff’s demand is illegal, a judgment of a justice will be reversed. The court say, “ It has been repeatedly decided, that where there was no evidence in favor of a demand, the judgment must be reversed. In this case the suit was on a note, and the illegality of its consideration was proved by witnesses on both sides. It was objected by counsel that the court would not reverse except for error of law, and would not reverse because verdict was against evidence. But the court answered, that the law requires the justice to return the facts, and that the court considered itself to have a more extensive jurisdiction as to proceedings in justices’ courts.
Dodge v. Coddington, 3 Johns. R. 146, February, 1808. This was an action on a promise to pay a certain sum when collected of a certain estate. The plaintiff gave no proof that money was collected and yet had judgment. It was objected that the court would not inquire as to the facts, and would not reverse a judgment, because against evidence. But the court say, “ The act of the legislature authorizes the court to require the justice to return the evidence, and if on the return of the justice it does not appear sufficient to support the action, the court will reverse the judgment, and we have often so decided.” Judgment reversed. The statute then in existence authorized the return, because the court were required to give judgment as the very right of the case should appear, which they could not do unless the facts were returned.
Kidder v. Townsend, 3 Johns. R. 435, August, 1808. Court decided from the evidence contained in return that it was not sufficient to support the declaration, and reversed the judgment. The statute requiring a return was passed in April, 1808, and this return must have been made previous to the passage of the act, as it was decided only four months after its passage.
* Wilcox v. Fenner, 3 Johns. R. 439, August, 1808. The [*307 ] court say, “ The justice is not bound to state the evidence in his return unless called upon to do so.” Clearly showing that this was spoken in reference to the law as it existed previous to the act of 1808, by that act he is bound to return; and they then add, “If the plaintiff.in error wishes for explanation as to the evidence offered, he should have applied to the court for a rule on the justice for that purpose. The mode in which evidence was formerly obtained was by rule, but the act of April, 1808, requiring *234 the justice to return to facts, superceded that practice. See 2 Caines, R. 110, note to Schoonmaker v. Trans.
The only case in opposition to this uniform current of decisions is that of Van Patten v. Ouderkirk, 2 Johns. Cas. 108, October, 1800-, in which a motion was made to quash a certiorari, on the ground that it required the justice to return the testimony. The court say, “ The justice is not bound to return any thing but what can legally be required of him, notwithstanding the command expressed in the writ. In this case he ought to return all lut the testimony ; he need take no notice of that part of the precept which enjoins him to return that.” It is manifest that the court could not have adverted to the act of 1792, which contemplated a reversal for any error in the judgment Q facts as well as law). Besides, this case does not seem to-have been much considered, and at all events it stands alone.
Mr. Justice Bronson sums up the whole law on this subject in Stryker v.Bergen, 15 Wend. 490, in which, after adverting to the rule of the supreme court in certiorari cases under the Revised Statutes, confining their decisions-to questions of law, he says that under the former act, the supreme court exercised a somewhat larger jurisdiction; justice’s judgments were reversed' not only for excess of jurisdiction—errors in law—and want of conformity to the directions of the statute, but the evidence in the court helow was sometimes examined, to see whether there was a foundation for the judgment; but the judgment was never reversed when there was some evi- [ *308 ] dence, however light, to support the judgment, or where there *was evidence on both sides, and he cites cases to support this position.
This doctrine has been approved and confirmed by the court for the correction of errors, in Noyes v. Hewitt, 18 Wendell, 145. It is the doctrine held in The King v. Bryan, Andrews’ R. 81, where Lee C. J., said, “ I do not say that all the evidence should be shown, but certainly so much ought to he set out as is sufficient to warrant the conviction.” It is the rule which should prevail. Enough should appear to satisfy the court that the jury might have honestly, though mistakenly, given their verdict, and although the court should arrive at a different conclusion, yet they will not for that cause reverse the judgment. In this way, parties will have the benefit of the supervisory power of the highest tribunal, without subjecting the administration of justice to the inconvenience and delay of re-trying every cause decided in the inferior tribunals. It is Worthy of remark that in the case of The People v. Fuller, 17 Wendell, 211, the court recognize this principle on a certiorari issued to bring up the proceedings had before a justice, under the act to prevent the disturbance of religious meetings. They say the. justice “ erred in pronouncing judgment and imposing a fine in the absence of any proof whatever, that an offence had been committedand again “ If any evidence had been given to prove the offence, the decision of the justice *235 ■would not be reviewed; but this was a conviction in the total absence of all proof of guilt.” The conviction, however, in that case was quashed, on the ground that the justice had no jurisdiction.
IV. The statute relative to summary proceedings to recover the possession of land,[expressly authorizes the supreme court to issue a certiorari to examine any adjudication made on any application authorized by that act: consequently by the statute itself, independent of the common law, the court have a right to look into an adjudication of fact as well as into an adjudication of law.
The language of the statute allowing a certiorari in cases of this kind, is clear and explicit: “ The supreme court may award a certiorari for the purpose of examining any adjudication, made on any application hereby authorized.” 2 R. S. 516, § 47. *The revisers in their [ *309 ] note to this section, 3 R. S. 766, say it is conformadle to 20 Johns. R. 82, referring to the case of Lynde v. Noble, which was an adjudication upon the landlord and tenant act, in which the court say that the question tried in the inferior jurisdiction may be reviewed. Mr. Justice Gowen holds, in 17 Wendell, 470, that the provision, (speaking of section forty-seven above referred to,) is no more than what the common law had before said. Chief Justice Savage, however, had long before intimated the opinion that by section forty-seven, exclusive jurisdiction to award a certiorari in these cases was conferred upon the supreme court, 9 Wendell, 230.
It is difficult to conceive of language more explicit. There is nothing to indicate an intention to confine the power to the examination of mere questions of jurisdiction and regularity ; and on the contrary the uniform course of proceeding in summary proceedings, being to examine into the facts, the fair interpretation of the statute is, that the intention was to give power to examine into adjudications of fact as well as of law. Mr. Justice Gowen, however, in 17 Wendell, 470, holds differently. He says the statute says no more than what the common law had said before. If he holds that facts were always inquirable into, he is right; but he does not hold so. He requires an express enlargement of power. It is granted; and yet he refuses to entertain the jurisdiction conferred. Again, in 471, the learned judge says the statute leaves the effect of the writ the same as before its passage, and merely declares what had been said in Lynde v. Noble, 20 Johns. R. 80. Be it so. That case declares “ that the necessity of a superintending power to revise the proceedings of inferior officers cannot be questioned.” The revisers “ say that section forty-seven is conformable to 20 Johns 82,” and they might have added, 20 Johns. 430, where the court say “ it is indispensably necessary that we should have the whole proceedings before us and “ the party is entitled to such a notice as will bring the merits of the question fairly before us.” It is presumable that both these cases in 20 Johnson, were in the minds of the revisers.
*236 [ *310 ] *Besides: The extent of the jurisdiction, and the consequences of a judgment in those summary proceedings shows the necessity of a supervision and review, as well in matters of fact as law. The jurisdiction extends to any tenant whether at will, or for one or more years. A tenant for 100 years is as subject to those proceedings as a tenant for one year or less: and when a warrant issues, the contract for the premises and the relation of landlord and tenant is cancelled and anmdled. 2 R. S. 512, § 28. Id. 515, § 43.
The fact that there is no appeal where there is a trial in these cases, shows the absolute necessity of a certiarori in its fullest vigor. In 2 Burr. 1042, and Douglass, 554, a certiorari was denied, because the party was entitled to an appeal; and for no other reason.
V. point. Unless the special tribunals authorized by law to pass upon the rights of the citizen by a course of summary proceedings are compellable to return so much of their proceedings and of the evidence before them as to show that at least there was some evidence to authorize the judgment pronounced by them, the citizens of this state will be subjected to the grossest injustice.
In support of which point the counsel cited the following cases to show the practical consequences of the rule laid down by the supreme court: Pugsley v. Anderson, 3 Wendell, 468. This was a certiorari brought to review the finding of a jury relative to an encroachment upon a highway. They found an encroachment, and the court decided that the proceedings could not be reviewed ; that a certiorari did not lie ; that the justice had no authority to decide upon the qualifications of jurors, and virtually held that he was a mere machine or automaton, and dismissed the certiorari.
Pearsall v. Commissioners of North Hempstead, 17 Wendell, 14, was a similar proceeding and the doctrine of the last case was reiterated and followed and certiorari dismissed.
Then came the case of Birdsall v. Phillips, 17 Wendell, 468, which was a certiorari to remove proceedings under the landlord and tenant act, in which the court held that the decisions of the magistrate as to the admission or rejection of evidence, or the instructions given to a jury on [ *311 ] submitting *the case to their consideration, cannot be reviewed by certiorari; that the policy of the law in creating those sum- ■ mary jurisdictions is, that their decisions on the merits shall be final and conclusive, and if they err upon questions either of law or fact, the parties are remediless; and that on a return to a common law certiorari, no other questions can be raised than those relating to the jurisdiction of the court, and to the regularity of the proceedings. This case was followed by Allyn v. The Commissioners of highways of Schodack, 19 Wendell, 342, which was a certiorari to judges of the common pleas to bring up a decision made by them affirming an order of commissioners, declaring a pqblic road by use *237 a highway. The court lay down the doctrine that they could not review the questions of fact, and that if the commissioners and judges had erred in their decision, the error could not he corrected by certiorari.
The counsel for the plaintiff in error was about to proceed to comment upon the cases cited in the opinions delivered in the supreme court in this case, and in the case of Birdsall v. Phillips, when he was interrupted by the Chancellor, and informed that he had no doubt in his mind that a certiorari lay in this case, and that the evidence was properly returned; .that he had delivered an opinion to that effect at a late session of this court on a question under this same statute, and that he presumed the other members of the court concurred with, him in opinion, (the Chancellor referred to the opinion delivered by him in the case of Anderson v. Prindle, now reported in 23 Wendell, 616, which the counsel had not then seen) ; but that he was of opinion that the verdict found by the jury was warranted hy the evidence, and that therefore the judgment of the supreme court ought not to be reversed. That hé, however, would hear what the counsel had to say upon the insufficiency of the evidence. The counsel answered that, as he read the return, there was no evidence whatever to prove the existence of the reservation claimed by the landlord to terminate the lease previous to the expiration of the year; that the proof went no farther than to show a disposition on the part of the tenant to gratify his landlord if they could agree upon terms, but not acknowledging *the [ *312 ] existence of the reservation. That from the points submitted by his learned adversary in opposition to the writ of error, it was manifest that he also viewed that question in the same light as the counsel for the plaintiff in error. The supreme court also must have taken the same view of the question, or their decision would have been placed on the ground now suggested by the chancellor; but as it was, he had concluded his argument.
Without hearing the counsel for the defendant in error, the Chancellor, after expressing his views of the case, proposed the following resolution :
“ Resolved, That there was sufficient evidence in this case in the court below to authorize the finding of the jury, and therefore, that the judgment in the court below be affirmed.”
The question being put on the resolution, it was unanimously adopted.
Thereupon the question was put, Shall this judgment he reversed ? and all the members of the court, (twenty in number,) answered in the negative. Whereupon the judgment of the supreme court was Aeeirmed.