FRANK A. SMITH, Plaintiff, *v.* DAIRYMEN's LEAGUE CO-OPERATIVE ASSOCIATION, INC., et al., Defendants.

Supreme Court, Trial Term, Livingston County, October 18, 1945.

*George R. Graves* for plaintiff.

*George D. Newton* for Eva Bauman, as administratrix of the estate of Judson Hungerford, defendant.

*Erwin & Erwin* for Dairymen's League Co-operative Association, Inc., and another, defendants.

WHEELER, J. The question involved in this action relates to the right of a tenant of a farm holding over after the expiration of his lease to the purchase price of milk produced and sold by him during the time he remained in actual possession.

The relevant facts are not in serious dispute. Two elderly brothers, Judson Hungerford and Oliver Hungerford being owners as tenants in common of a farm in the town of York, Livingston County, New York, leased on shares the farm together with a herd of cattle and other personal property to Frank A. Smith, the plaintiff in this action. The lease was for one year from April 1, 1942, with the privilege of extending it for an additional year, providing all parties thereto consented. With the consent of the three parties the lease was renewed for an additional year which expired March 31, 1944.

During the second year of the lease a serious rift developed between the two Hungerford brothers as to whether the lease should be renewed for a third year. Judson, the elder brother, attempted to renew the lease. He executed a document dated January 22, 1944, which purported to be a renewal of the lease for one year from April 1, 1944. On March 30, 1944, he

executed, along with the tenant, a so-called landlord and tenant order directing the Dairymen's League to divide the milk checks and pay one half thereof to the tenant and one half thereof to the owners. Furthermore, Judson represented to the plaintiff that he had a right to rent the farm, and that he would stand back of the plaintiff and save him harmless from any damage or loss which might result from plaintiff's continued occupancy.

The other brother, Oliver, remained adamant in his desire to terminate the lease and to end plaintiff's tenancy as of April 1, 1944. Plaintiff did not vacate the farm but remained in possession after April 1st, relying upon the purported renewal and the representations made by Judson. Thereafter, on April 4, 1944, Oliver commenced summary proceedings before the County Court to evict plaintiff from the farm. Plaintiff answered and defended on the grounds that the lease had been renewed by one of the owners and also that the proceeding could not be maintained in the name of one owner only. The County Court determined that Smith was holding over after the expiration of his term and granted an order of eviction. An appeal was taken to the Appellate Division and, pending the appeal, the County Judge granted a stay of the issuance of the warrant of eviction, pursuant to section 1443 of the Civil Practice Act. The Appellate Division affirmed the order of the County Court (268 App. Div. 949) and thereafter, on November 21, 1944, a warrant of eviction was issued, and plaintiff was removed from the farm.

During the period from April 1, 1944, to November 21, 1944, plaintiff sold and delivered milk produced from the cows on the farm to the Dairymen's League to the amount of $3,857.38. In this action plaintiff seeks to recover from the Dairymen's League one half of the purchase price of the milk sold.

Both Oliver Hungerford and the administratrix of the estate of Judson Hungerford have been made parties defendant, and each is now making a claim to one half of the milk money remaining in the possession of the Dairymen's League to the total exclusion of the plaintiff, who concededly produced and marketed the milk by his own labor and at his own expense.

It should be noted that the action is not to recover " a specific sum of money for work done on a dairy farm owned by two other parties ", as asserted in the brief filed on behalf of Oliver, but, on the contrary, it is solely to recover the purchase price of milk sold and delivered. In the present action we are not concerned with any possible claim for damages which the

owners may have against the plaintiff for holding over after the expiration of his lease.

The main contention of each of the Hungerfords is that the plaintiff was a trespasser during the period in question, and therefore not entitled to the proceeds of the milk or any other crops marketed by him during his occupancy.

The decision of the County Court in the summary proceedings and its affirmance by the Appellate Division must be accepted as the law of this case, namely, that there was no valid renewal of the lease and that the tenant was wrongfully holding over after the expiration of his term. (*Matter of Hungerford* v. *Smith,* 268 App. Div. 949.) Under such circumstances Oliver, as one of the owners, could and did elect to treat the plaintiff as a trespasser. (35 C J., Landlord and Tenant, § 167, and cases cited in n. 57 including *Kennedy* v. *City of New York,* 196 N. Y. 19, *Haynes* v. *Aldrich,* 133 N. Y. 287 and *Adams* v. *City of Cohoes,* 127 N. Y. 175.)

It is urged on behalf of the plaintiff that the practical effect of the stay was to give legal sanction to his continued possession, and therefore he should not be deemed a trespasser. "A stay of the issuance of a warrant prolongs the possession of the tenant, but does not preserve the relation of landlord and tenant." (8 Carmody on New York Pleading and Practice, § 320; *Zeiss* v. *Wurster,* 139 Misc. 538.) Whatever his technical status may have been, he was still withholding possession of the farm to which the owner, Oliver, was entitled, and it follows that he did so at his own risk.

But the risk assumed was not the loss of crops harvested, but that of responding in damages for the rental value of the use and occupation. For breach of a tenant's covenant to surrender possession at the expiration of the term, the landlord may recover the rental value of the premises during the time the possession is wrongfully withheld by the tenant. (Clark on New York Law of Damages, § 758; *Vernon* v. *Brown,* 40 App. Div. 204; *Kespert* v. *Union Indemnity Co.,* 198 N. Y. S. 532.) In the *Kespert* case (*supra,* p. 534) the Appellate Term stated: " * * * the actual rental value for the period of wrongful withholding is, in our opinion, the correct measure of Desmond's [the tenant], and thus of the defendant's, liability."

The owners having this complete remedy for the recovery of their damages, should they also have an additional right to bring an action for the value of the crops produced and sold or consumed by the tenant? This question brings us to the crux of this lawsuit.

There seems to be ample authority for the proposition that one who sows and harvests a crop upon the land of another is entitled to the crop as against the owner of the land, whether he came into possession of the land lawfully or not, provided he remains in possession until the crop is harvested. (39 A. L. R. 958; 57 A. L. R. 584; 36 C. J., Landlord and Tenant, § 739; *Stockwell* v. *Phelps,* 34 N. Y. 363; *Lynch* v. *Sprague Roller Mills,* 51 Wash. 535; *Rector* v. *Lewis,* 46 Cal. App. 168; *Adams* v. *Leip,* 71 Mo. 597; *Page* v. *Fowler,* 39 Cal. 412.) '' Even the crops gathered by a tenant at will or by a tenant by sufferance during his tenancy belong to him, *as even a mere trespasser* is entitled, as against the owner of the land, to the crops that he sows and harvests while he continues in possession '' (36 C. J., Landlord and Tenant, § 739). (Italics supplied.)

A distinction is made as between crops severed and unsevered. The rule is well settled that a crop sown by a trespasser, so long as it remains unsevered, belongs to the owner of the land. (39 A. L. R. 958.) In *Rector* v. *Lewis* (*supra*, p. 170) the court said: '' The rule applicable to crops grown and harvested upon land by a trespasser, or one in unlawful possession, not under circumstances to justify exemplary damages, would seem to be that if the possession is recovered by the owner, he takes the growing crops with the land; but that the crops harvested are the property of the one in unlawful possession, and the owner's remedy is to recover the rental value of his land.''

While there are but few New York cases on this subject, this court does not hesitate to follow the above decisions of other jurisdictions. The very fact that the owner may recover the rents and profits of the land shows that he cannot recover the gross value of the crops. It therefore follows that plaintiff was the owner of the milk produced and entitled to the proceeds thereof.

The rule relating to title to emblements or waygoing crops is something very different. In such a case the outgoing tenant is not entitled to the growing or unsevered crops on the land at the end of the term. (36 C. J., Landlord and Tenant, § 741.) Neither is the title to the crops in the instant case affected by the terms of the original lease, as all contractual relationship ceased after April 1, 1944.

The court is in full accord with the statement contained in defendant's brief to the effect that '' milk which is produced from cows is as definitely a farm product as is a crop of corn taken from the soil.''

Notwithstanding the conclusions reached herein as to the title to the crops including the milk produced and sold by plaintiff, the court is of the opinion that plaintiff should not be permitted to recover for more than one half of the proceeds of the milk sold to the Dairymen's League. There are two very good reasons for thus limiting his recovery: first, he is estopped by virtue of the landlord and tenant agreement with the Dairymen's League from claiming more than one half, and, secondly, that is all he is seeking to recover in this action.

The same result would be reached, as far as the plaintiff is concerned, if it were to be held that the title to the milk was not in the plaintiff but in the defendants. Under such circumstances the defendant Judson would be estopped from denying that plaintiff was a tenant, and therefore plaintiff would be entitled to an equitable lien upon the share belonging to Judson.

A finding should be made to the effect that Judson was not mentally incompetent during the period of time here involved. There was a paucity of evidence on this subject which was not convincing.

For the reasons stated the plaintiff is entitled to a judgment in the sum of $1,928.69, representing one half of the money being held by the defendant Dairymen's League, with interest from December 1, 1944, but without costs. Oliver Hungerford and the estate of Judson Hungerford are each entitled to one half of the balance and each is entitled to a judgment accordingly, without costs.

Findings of fact and conclusion of law may be settled upon notice.