JOHN D. MARTIN, Respondent, *v.* HARRY R. SHIELDS et al., Appellants.

Third Department, November 18, 1954.

*Allen M. Light* for appellants.

*Arnold G. Chapman* for respondent.

*Per Curiam.* The controversy in this case arises out of the following facts: The appellants conveyed to the responden' and his wife a life estate in a farmhouse, designated as the "Brick House" on July 5, 1946, and the parties concurrently entered into a contract in writing under which it was agreed that until such time as the respondent and his wife desired to occupy the house, the appellants could "continue to live in said house, and shall have the right to live in said house with the other party until the Rowlson lease expires, or, as long as is agreeable to all parties concerned."

The Rowlson lease referred to in the contract related to another house on the same farm known as the "White House". Under date of August 11, 1942, Gladys Shields, one of the appellants, had leased the White House to Dr. Rowlson for a term of three years, commencing September 1, 1942, and ending August 31, 1945, with an option to the tenant to renew for an additional term of three years. In July, 1946, when the appellants entered into the arrangement with the respondent with respect to the Brick House, Dr. Rowlson was in possession of the White House under the renewal term which was to expire on August 31, 1948.

The appellants continued to live in the Brick House under the terms of their contract with the respondent until August 15, 1948, when the respondent served notice upon them in writing that "he requested possession of said premises on and after the 15th day of September 1948". The appellants failed to move out pursuant to this notice and in May, 1950, a summary proceeding was brought in the Justice's Court.

Three contentions were advanced by the appellants: (1) that a relationship of landlord and tenant did not exist between the respondent and the appellants and that therefore a summary proceeding would not lie; (2) that the appellants' right to possession of the Brick House had not terminated prior to the institution of the summary proceeding; (3) that the petition in the summary proceeding was defective because of the failure of the respondent to join his wife, the co-owner of the life estate, as one of the petitioners.

The Justice of the Peace ruled in favor of the respondent on all three issues and the County Court affirmed. We likewise affirm.

(1) The agreement of July 5, 1946, sufficiently established a relationship of landlord and tenant (1 New York Law of Landlord & Tenant, § 47; *Hunt* v. *Comstock,* 15 Wend. 665).

(2) The appellants' right to possession had terminated at the time of the bringing of the summary proceeding. Under the terms of the agreement, the appellants could not be required to vacate the Brick House until the Rowlson lease on the White House had expired but the expiration of the Rowlson lease, which was referred to in the agreement, was the expiration of the current term under which the Rowlsons were then in possession. That term was to expire on August 31, 1948. It was apparently contemplated that the White House would be available for the appellants' occupancy after that date and that they would remove from the Brick House whenever requested to do so after that date. The appellants had no right to accept renewals of the Rowlson lease indefinitely and thereby to extend indefinitely their right to remain in the Brick House.

The appellants contend that they had the right to allow Dr. Rowlson to continue in the White House as a holdover tenant after August 31, 1948, because they had not been requested to remove from the White House prior to that date and that the result of the holdover was a renewal of the Rowlson lease for an additional term of three years which would not expire until August 31, 1951.

This argument is untenable for two reasons. First of all, the appellants had been given notice prior to August 31st that the respondent desired them to vacate on September 15th. In view of this notice, the appellants should not have allowed Dr. Rowlson to renew his lease but should have insisted upon his vacating the premises on August 31st or within a short time thereafter. Furthermore, even if the appellants were justified in allowing Dr. Rowlson to remain in possession beyond August 31st as a holdover tenant, the renewal would run only for a term of one year, which would expire on August 31, 1949. Where a tenant in possession under a lease for a term of more than one year holds over after the expiration of the term and the landlord allows him to remain in possession, there is an implied renewal for an additional term of one year. The Statute of Frauds prevents the implication of renewal for any longer period (*Schuyler* v. *Smith,* 51 N. Y. 309; 3 New York Law of Landlord & Tenant, § 1055, and the cases there cited).

There was no possible justification for the appellants' permitting Dr. Rowlson to remain in possession beyond August 31, 1949. From that date on, the White House should have been available for the appellants' occupancy and the appellants should have vacated the Brick House long before the institution of the summary proceeding in May, 1950.

(3) The bringing of the proceeding in the name of the respondent without the joinder of his wife was entirely proper. One of two co-owners may maintain a summary proceeding to regain possession in his own name (*Smith* v. *Dairymen's League Co-op. Assn.,* 186 Misc. 82).

The order and judgment appealed from should be affirmed, with costs.

BERGAN, J. P., COON, HALPERN, IMRIE and ZELLER, JJ., concur.

Order and judgment affirmed, with costs.